## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JULIE O'STEEN AND CHRISTOPHER O'STEEN,

     Plaintiff,

v.

WELLS FARGO BANK, N.A.; WELLS FARGO HOME MORTGAGE, INC.; RUSHMORE LOAN MANAGEMENT SERVICES, LLC,

     Defendants.

_____/

Case No.: 6:17-CV-00849-GAP-KRS

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, RUSHMORE LOAN MANAGEMENT SERVICES LLC ("Rushmore") by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01, move this Court for the entry of a judgment against Plaintiffs', JULIE O'STEEN ("Julie") and CHRISTOPHER O'STEEN ("Christopher")(jointly "Plaintiffs"),and in support thereof states:

### RELIEF REQUESTED

1.    Summary judgment is proper in this matter as the Plaintiffs cannot establish that the Trial Modification, offered by WELLS FARGO HOME MORTGAGE, INC. ("Wells Fargo"), was a permanent modification and an enforceable, valid contact. The Plaintiffs claims against Rushmore rest solely on interactions the Plaintiffs had with Wells Fargo, and in fact, the summary judgment evidence conclusively establishes that the Plaintiffs had no contact with Rushmore.  In addition, the Plaintiffs did not respond to any loss mitigation solicitation sent by Rushmore. Accordingly, the Plaintiffs cannot establish that Rushmore committed any wrongs against them, and summary judgment must be granted in favor of Rushmore.

## <u>STATEMENT OF UNDISPUTED FACTS</u>

a. **The Foreclosure Action & Trial Modification**

2.     Julie executed a Note on April 5, 2002 in the amount of $82,400.00 with Wells Fargo. **AFF. ¶3, Ex. A.** The Note was secured by a Mortgage executed contemporaneously, and was joined by Christopher. **AFF. ¶3, Ex. A.** The Mortgage encumbered the property located at 425 Belair Ave Merritt Island, Florida 32953 ("Property").

3.     The Plaintiffs defaulted under the Note and Mortgage and WELLS FARGO BANK, N.A. ("WFB") initiated a foreclosure action on December 3, 2012 styled *Wells Fargo Bank, N.A. v. Julie Barbara O'Steen a/k/a Julie B. O'Steen a/k/a Julie O'Steen*, case no. 2012-CA-64657 ("Foreclosure Action). **AFF. ¶ 6, Ex. C; J.N., Ex. A.**

4.     On January 9, 2014, the State Court in the Foreclosure Action entered a Final Summary Judgment of Mortgage Foreclosure ("Final Judgment") against the Plaintiffs and in favor of WFB. **AFF. ¶6, Ex. C; J.N., Ex. B.** The Plaintiffs did not appeal the Final Judgment. **AFF. 6; J.N., Ex. C.**

5.     After the entry of the Final Judgment the Plaintiffs worked with Wells Fargo on a loan modification review, and on October 23, 2014 were offered a Trial Period Plan Notice ("Trial Modification"). **AFF. ¶7, Ex. D.** The Trial Modification provided that it was "the first step toward qualifying for more affordable mortgage payments." **AFF. ¶7, Ex. D.**

6.     Additionally, the modification provided the following:

> Please note that your trial period may extend beyond the dates provided.   For that reason, continue making your trial period payments in the same amount by the same day of each month the trial payments are listed as above ***until your home preservation specialist advises that you may move forward with a final modification***, or that you are no longer eligible for a modification.
>
> Some reasons for the extension could be tied to other liens you have on your property that may be required to be cleared prior to final approval of your modification.   For example, we may need to receive a subordination agreement* from other lenders so that we can maintain our lien position; ***or if you have a***

*judgment placed on your property you may be required to pay off the lien. Your mortgage may only be modified after we determine all your trial period payments were made on time and you submitted all the required documents, including any title clearance requirements*, as described above. If you fail to provide a subordination agreement from another lender or fail to pay off a judgment lien as required, your modification may be denied even if you pay the trial payments.

**AFF. ¶7, Ex. D.** (Emphasis Added). The Trial Modification also included a question and answer section. In this section of the Trial Modification, Wells Fargo clearly advised the Plaintiffs that they are "required to a complete a trial period prior to entering into a Loan Modification Agreement," and "[y]our loan will not be modified until you successfully complete the Trial Period Plan and you enter into a Loan Modification Agreement." **AFF. ¶7, Ex. D.** However, on October 31, 2014 the Plaintiffs received their first notification that a final modification could not be offered due to a title issues, and to fix these issues to move forward. **AFF. ¶7, Exs. E.**

7. The Plaintiffs did make payments under the Trial Modification, but Wells Fargo denied them, again. for a final modification as there were "title issues" with the property which prevented the ability finalize a permanent modification. **AFF. ¶7, Ex. F.** Rather than appeal the decision, Christopher filed a voluntary petition under Chapter 7 of the Bankruptcy Code, case no. 6:15-bk-03869-CCJ ("Bankruptcy Proceeding"), in an apparent to attempt to fix the title issues. **J.N., Ex. D.**

8. Christopher filed schedules in the Bankruptcy Proceeding, and in Schedule A did not state he had in interest in the Property. **J.N., Ex. D.** Nor did Christopher claim the Property exempt in Schedule C. **J.N., Ex. D.** He also did not include WFB or Wells Fargo as secured creditors for the Property. **J.N., Ex. D.** Christopher received a discharge of debt in his Bankruptcy Proceeding. **J.N., Ex. E.**

9. After the Bankruptcy Proceeding, WFB petitioned the State Court to re-set the

foreclosure sale, which was granted by the Court. **J.N., Ex. F.**   The foreclosure sale took place

on March 1, 2017, and the Judgment was assigned to a new creditor as well. **J.N., Ex. G.**   The

Plaintiffs filed an objection to sale raising the same issues raised in this action, but did not

provide the State Court any evidence of a loss mitigation package being submitted to WFB,

Wells Fargo or Rushmore, and did not attach a new trial modification or permanent modification.

**J.N., Ex. H.**

b. **Loss Mitigation With Rushmore**

10.   Rushmore became the service for the subject loan on April 5, 2016. **AFF. ¶6, Ex.**

**B.**   When Rushmore boarded the subject loan from Wells Fargo, Wells Fargo system notes did

not indicate that a permanent modification was offered, or executed by the Plaintiffs. **AFF. ¶7-8,**

**Ex. D.**   However, Rushmore was provided with denial letters from Wells Fargo to the Plaintiffs

regarding the Trial Modification. **AFF. ¶7, Ex. E&F.**

11.   Rushmore sent loss mitigation solicitations to the Plaintiffs on July 11, 2016,

August 13, 2016, September 17, 2016, October 20, 2016 and December 1, 2016. **AFF. ¶9, Ex.**

**G.**   The Plaintiffs did not respond to the solicitations, and did not have any communication with

Rushmore regarding the subject loan prior to filing this action.   **AFF. ¶9, Ex. G.**   The Plaintiffs

did not reapply for a loan modification, or provide Rushmore with any loss mitigation

information prior to the foreclosure sale. **AFF. ¶10, Ex. G.**

12.   Rather than apply for another modification agreement, Plaintiffs filed this action

against Rushmore, WFB and Wells Fargo to enforce the denied Trial Modification.

## MEMORANDUM OF LAW

a. **Summary Judgment Standard**

13.   Under Federal Rule of Civil Procedure 56(c):

summary judgment is appropriate if the evidence before the court shows that there
is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law. In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)(internal marks and citations omitted).The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

14.     To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has met its burden under Rule 56(a), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

15.     In order for self-servicing testimony, by itself, to create an issue of fact for summary judgment to be denied, the conflicting evidence must be substantial. *United States v. Davis*, 809 F. 2d 1509, 1512 (11th Cir. 1987). Where an overwhelming mass of direct and

circumstantial evidence supports a given finding, a party's self-servicing statements in opposition to that finding does not create a conflict in substantial evidence sufficient to avoid a directed verdict against the non-moving party. *Id.*

b. **Count II – Breach of Contract Fails as a Matter of Law**

16.      Plaintiffs' cannot establish the existence of a valid contract modifying the subject loan. The elements of breach of contract are: "(1) a valid contract; (2) a material breach; and (3) damages." *Sulkin v. All Fla. Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. 4th DCA 2006) (*quoting J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003)). In addition, performance of a pre-existing duty would not suffice as consideration necessary to support a valid contract. *See Brinson v. Herlong*, 164 So. 137 (Fla. 1935).   For the following three reasons this Count fails: (1) the Trial Modification is not a Valid Contract; (2) Assuming the Court held the Trial Modification as a binding contract, Rushmore, nor WFB and Wells Fargo breached the terms of the Trial Modification; and (3) Plaintiffs cannot produce any evidence that Rushmore had an obligation to honor the Trial Modification, which was denied by Wells Fargo.

i.      ***Trial Modification is not a Valid Contract***

17.      The Trial Modification cannot be considered a valid contract against Rushmore. *See Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1351 (S.D. Fla. 2011)(finding a trial modification is not a valid contract as the terms are not specified). [1] In *Senter*, the plaintiff

---

[1] Rushmore notes several other Courts have held that a Trial Modification is not an enforceable contract. *See, e.g., Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1066 1068 (N.D. Cal. 2011) (dismissing breach of contract claim under Rule 12(b)(6) on the basis that TPP did not give rise to enforceable contract because Plaintiffs had not alleged that they had received a modification agreement, as required under Section 2 of the TPP); *Grill v. BAC Home Loans Servicing*, 2011 U.S. Dist. LEXIS 3771, 2011 WL 127891, at *3-4 (E.D. Cal. Jan. 14, 2011) (same); *Prasad v. BAC Home Loans Servicing LP*, 2010 U.S. Dist. LEXIS 133938, 2010 WL 5090331 (E.D.Cal., Dec. 7, 2010) (same); *Stovall v. SunTrust Mortg., Inc.*, 2011 U.S. Dist. LEXIS 106137, 2011 WL 4402680, at * 11-12 (D.Md., Sept. 20, 2011) (same). In addition, in *Nungaray v. Litton Loan Servicing*, 200 Cal. App. 4th 1499, 1504-1505, 135 Cal. Rptr. 3d 442 (2011), a California appellate court held, on summary judgment, that the plaintiff's breach of contract claim was subject to dismissal, stating that "there was no contract here."

argued that a TPP agreement (also known as a trial modification), which reduced their monthly payments was a valid contract. *Id.* at 1346-47.   The plaintiff argued that she provided sufficient consideration in the form of "(1) to forego monies paid into escrow, (2) to have the Defendants apply such monies to any delinquent monthly payments, (3) to not short sell the property, (4) to remain in the property as her primary residence, and (5) to pay defaulted interest and other mortgage servicing fees." *Id.* at 1346.   However, the Court agreed with the defendant that these considerations were pre-existing duties arising from the initial note and mortgage and by the terms of the TPP Agreement, it was not a binding contract.   *Id.*

18.   In this case the Trial Modification did not offer any separate consideration than the original Note and Mortgage. The Plaintiffs already were required to make mortgage payments prior to the Trial Modification.   The Trial Modification makes clear that the terms of the Note and Mortgage remain in full effect, and that the Trial Modification itself was not final until additional acts we done.   The Trial Modification states in numerous places that the Plaintiffs not only had to make the payments to receive a permanent modification, but title would also have to be clear.   Without these two elements the Plaintiff would not be entitled to a permanent modification, and the denial letters establish that the title issues on the Property would bar a final modification.

19.   The terms of the Trial Modification were not definite, concrete terms.   The Trial Modification still required that a representative from Wells Fargo advise the Plaintiffs that a final modification was offered.   Therefore, the Trial Modification was only an opportunity for the Plaintiffs to remain in the home, make altered mortgage payments to allow them to complete the review process to obtain a final modification.   But unless all conditions were met, the Trial Modification would not be converted to a final modification, and therefore it is not a valid contact. There was a lack of consideration and mutual meetings of the minds to establish that this

Trial Modification was permanent.

20.     For these reasons Count I fails as a matter of law and the Plaintiffs cannot establish Rushmore breached the Trial Modification as it was not a contract.

> ### ii.     Assuming Arguendo this Court finds the Trial Modification to be a Valid Contract, Rushmore did not Breach the Contract

21.     This Court cannot find that Rushmore, or its predecessors-in-interest, breached the terms of the Trial Modification.   The Court in *Senter* also analyzed this issue.   *Id.* at 1356-57. The plain language of the TPP Agreement in *Senter*, and similarly in this case, created additional considerations prior to obtaining a permanent modification. *Id.*   The Court specifically held that:

> Given the plain language of the TPP Agreements in the instant case, this Court is comfortable holding that the TPP Agreements are not agreements to provide the Plaintiffs with a loan at a specified date, but rather, an agreement governing obligations of both the Plaintiffs and the Defendants over a trial period after which the Defendants may extend a separate permanent loan modification should they determine that the Plaintiffs qualify.

*Id.* at 1357.

22.     In this case, the Trial Modification provided that payments alone were insufficient to obtain a final modification.   The Plaintiffs were required to have the property free and clear of other title issues.   The Plaintiffs were put on notice of this on October 31, 2014, and again on May 1, 2015 when they were denied.   The Plaintiffs did not clear the title issues prior to Wells Fargo declining them for a permanent modification.   Wells Fargo did not breach the terms of the Trial Modification as they were entitled to decline the Plaintiffs due to this issue, and made that clear.   Additionally, at this time Rushmore was not servicing the loan and therefore could not breach the Trial Modification, and are not liable for Wells Fargo properly declining the modification.

### iii.    *Rushmore was under no Obligation to Honor the Denied Trial Modification*

23.    Rushmore is the successor servicer for this loan.   The allegations raised by the Plaintiffs involve a time in which Rushmore was not involved with the Trial Modification review.   Rushmore, after completing a verification process, is entitled to rely on the servicing records of Wells Fargo, and WFB.   *See In re Sagamore Partners*, *Ltd.*, 2012 Bankr. LEXIS 3800 (Bankr. S.D. 2012); *see also Bank of N.Y. v. Calloway*, 157 So. 3d 1064.

24.    Here, Rushmore received records from Wells Fargo indicating that a Trial Modification was offered and properly denied due to title issues. Rushmore was not required to re-offer a denied Trial Modification as Wells Fargo properly denied it.   In addition, Rushmore received no correspondence from the Plaintiffs regarding the Trial Modification, and received no response from its own solicitations for loss mitigation.

25.    Plaintiffs would require Rushmore to revisit every failed modification it discovers when boarding a new loan.   There is no requirement under Federal or Florida Law that Rushmore undertake a task such as this.   Rather, the Plaintiffs should have, and failed to do so, re-applied for a loan modification after Christopher's Bankruptcy Proceeding.   Accordingly, as the Trial Modification did not involve Rushmore, and Rushmore properly relied on Wells Fargo's business records showing a denied modification, judgment must be entered in favor of Rushmore for Count I.

### c.  **Count V – Regulation x, 12 CFR 1024.41(g)**

26.    Plaintiff cannot establish a violation under Regulation X.   Regulation X became effective on January 10, 2014. *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10696-01, 10696 (Feb. 14, 2013). Regulation X prescribes what a servicer must do **on receipt of a loss mitigation application**. 12 C.F.R. § 1024.41(b)-(j) (Emphasis Added).   A servicer "is only required to comply with the requirements

of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i).

      27.     12 C.F.R. § 1024.41(g), which states:

> [i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any . . . foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . . .

12 C.F.R. § 1024.41(g). However, a servicer may move for a foreclosure judgment notwithstanding a borrower's submission of a complete loss mitigation application if one of three exceptions applies. Id. at § 1024.41(g)(1)-(3). Furthermore, while Regulation X defines two types of loss mitigation applications, 12 C.F.R. §§ 1024.41(b)(1), (c)(2)(iv) (defining complete and facially complete loss mitigation applications), a facially complete loss mitigation application is treated as a complete loss mitigation application for purposes of 12 C.F.R. § 1024.41(g). Id. at § 1024.41(c)(2)(iv). And, "[i]f the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraph[] . . . (g) . . . ." Id.

      28.     The Plaintiffs never submitted a loss mitigation application to Rushmore.  Not only does Rushmore's servicing records reflect this, the Plaintiffs concede this fact.  This Court required the Plaintiffs to answer the following interrogatory: "(9) Did you or your agent ever submit a loss mitigation application to Defendant? If so, on what date."  In response, the Plaintiffs stated:

> In October of 2014, Plaintiffs submitted a complete loss mitigation ***application to Wells Fargo***, at which time Wells Fargo approved Plaintiffs for a trial payment plan ("TPP"), pursuant to which they were required to, and did, make at least three monthly payments beginning December 1, 2014.

(Emphasis Added).   Plaintiffs cannot provide any evidence connecting Rushmore to a loss mitigation application, and as stated above, Rushmore properly relied on Wells Fargo's business

records indicating a declined modification when it began servicing the loan.

29.     The summary judgment conclusively establishes when Rushmore began servicing this loan there was no loss mitigation application pending, and that the Plaintiffs never submitted a loss mitigation application to Rushmore prior to the foreclosure sale.   In addition, the Plaintiffs addressed this issue in the Foreclosure Action.

30.     First, Plaintiffs did not object to the Motion to Re-set Sale based on a loss mitigation application.   Second, the Plaintiffs raised this exact issue in their Objection to Sale. The State Court denied the objection, and the Plaintiffs did not appeal that decision.   Therefore, this Count is also barred by the *Rooker Feldman* Doctrine to rule on this issue. *See Nicholson v. Shafe*, 558 F. 3d 1266, 1274-75 (11th Cir. 2009).   Accordingly, judgment must be entered in favor of Rushmore as to this Count.

### d.  **Count VI – Declaratory Relief**

31.     Plaintiffs claim for declaratory relief fail as a matter of law.   To demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999), *citing See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983); *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id*. at 1347

32.     To state a claim under The Declaratory Judgment Act: "'there must be an actual issue in controversy as opposed to one that is hypothetical or contrived, the case must not be the medium for securing an advisory opinion, the matter must be definite and concrete, the parties'

positions must be defined and adversarial and the issues must be susceptible to judicial determination.'" *Kingsley v. State Farm Mut. Auto. Ins. Co.*, 353 F. Supp. 2d 1242, 1254 (N.D. Ga. 2005), *quoting GE Life & Annuity Assur. Co. v. Combs*, 191 F. Supp. 2d 1364, 1370 (M.D. Ga. 2002)).

33.     The Plaintiffs' claims derive from the uncertainty on whether there is a permanent loan modification and the application of Regulation X to this case.   For the reasons set forth above, there is no uncertainty between Rushmore and the Plaintiffs due to the lack of a valid modification and failure to submit a loss mitigation package to Rushmore.   Accordingly, this Court must enter judgment in favor of Rushmore for this Count.

## CONCLUSION

34.     The Plaintiffs are unable to present any evidence that Rushmore committed any wrongs against them.   This is a case where the Plaintiffs were properly denied a modification due to title issues, and failed to re-apply for a modification.   Rather than re-apply for a modification after being denied, the Plaintiffs initiated this action, and did not communicate with Rushmore at all regarding the possibility of being modified after the Bankruptcy Proceeding. Plaintiffs cannot hold Rushmore liable when review for a modification and denial was complete prior to Rushmore servicing this loan.   For the reasons stated above, this Court must deny the relief sought by the Plaintiff's and enter judgment in favor of Rushmore.

**WHEREFORE**, Defendant, RUSHMORE LOAN MANAGEMENT SERVICES LLC, respectfully requests that this Court enter judgment in its favor and against JULIE O'STEEN and CHRISTOPHER O'STEEN ,and for any such further relief this Court deems proper and just.

**SHD Legal Group P.A.**
Attorneys for Rushmore
PO BOX 19519
Fort Lauderdale, FL   33318
Telephone: (954) 564-0071
Facsimile:   (954) 564-9252
Service E-mail: adiaz@shdlegalgroup.com

By: ____/s/ *Adam A. Diaz*____
Adam A. Diaz
Florida Bar No. 98379

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic or U.S. mail on this 21st day of June 2017 to:

Michael Alex Wasylik
Ricardo & Wasylik, PL
38008 Live Oak Ave.
Dade City, FL 33526
*Attorney for Plaintiffs*

Michele L. Stocker
Linda M. Reck
Greenberg Traurig, LLP
401 E Las Olas Blvd, Ste 2000
Ft Lauderdale, FL 33301-4223
*Attorney for Defendant*

**SHD Legal Group P.A.**
Attorneys for Rushmore
PO BOX 19519
Fort Lauderdale, FL   33318
Phone: (954) 564-0071
Fax: (954) 564-9252
E-mail: ADiaz@shdlegalgroup.com

By: /s/_*Adam A. Diaz*_____
    Adam A. Diaz
    Florida Bar No. 98379

1460-162958