UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
Case No.: 8:16-CV-2993-VMC-MAP

JULIE O'STEEN and
CHRISTOPHER O'STEEN

        Plaintiffs,

v.

WELLS FARGO BANK, N.A., WELLS
FARGO HOME MORTGAGE, INC., and
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC.

        Defendants.

_____/

## DECLARATION OF RICHARD L PENNO
## PURSUANT TO 28 U.S.C. § 1746

I, Richard L Penno, hereby declare, subject to the penalties of perjury, that the following is true and correct and within my personal knowledge:

1.    I am Vice President Loan Documentation for Wells Fargo Bank, N.A. ("Wells Fargo").

2.    On or about April 5, 2002, Plaintiff Julie O'Steen executed and delivered to Wells Fargo Home Mortgage, Inc. a Fixed Rate Note in the principal amount of $82,400.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

3.    As security for the indebtedness evidenced by the Note, Plaintiff Julie B. O'Steen and her spouse, Plaintiff Christopher B. O'Steen, executed a Mortgage in favor of Wells Fargo Home Mortgage, Inc. (the "Mortgage") (the Note and Mortgage are collectively referred to herein as the "Loan") encumbering the property located at 425 Belair Ave., Merritt Island, FL

32953 (the "Property"). A true and correct copy of the Mortgage is attached hereto as **Exhibit B**.

4.      Effective May 8, 2004, Wells Fargo Home Mortgage, Inc. was acquired by and merged into Wells Fargo Bank, National Association. During the time relevant to this action, Wells Fargo acted as servicer for Plaintiffs' Loan.

5.      Wells Fargo's regular practice is to generate and mail letters on the date of the notice, but not later than two days from the date of the notice, and once mailed, to place a copy of the notice in Wells Fargo's file for that mortgage loan. A copy of the letter mailed is maintained in an electronic file created and maintained by Wells Fargo in their Imaging & Content Management Platform ("ICMP system").

6.      By a letter dated October 23, 2014, Wells Fargo notified Plaintiffs that they had been approved for a trial payment plan under which they were required to make three monthly payments. A copy of the October 23, 2014 letter was uploaded into and appears in Wells Fargo's ICMP system. A true and correct copy of the October 23, 2014 letter as it appears in the ICMP system and its enclosures are attached hereto as **Exhibit C**.

7.      By a letter dated October 31, 2014, Wells Fargo notified Plaintiffs that Wells Fargo would be unable to complete the final modification of the Loan until certain title issues on the Property were resolved. A copy of the October 31, 2014 letter was uploaded into and appears in Wells Fargo's ICMP system. A true and correct copy of the October 31, 2014 letter as it appears in the ICMP system and its enclosures are attached hereto as **Exhibit D**.

8.      By a letter dated February 3, 2015, Wells Fargo notified Plaintiffs that Wells Fargo had not received the documents required to move forward with a loan modification. A copy of the February 3, 2015 letter was uploaded into and appears in Wells Fargo's ICMP

system. A true and correct copy of the February 3, 2015 letter as it appears in the ICMP system and its enclosures are attached hereto as **Exhibit E**.

9.      By a letter dated March 23, 2015, Wells Fargo notified Plaintiffs that Wells Fargo could not proceed with a final modification of the Loan unless and until Plaintiffs provided documented proof that the title issues to the Property had been resolved. A copy of the March 23, 2015 letter was uploaded into and appears in Wells Fargo's ICMP system. A true and correct copy of the March 23, 2015 letter as it appears in the ICMP system is attached hereto as **Exhibit F**.

10.     By a letter dated May 1, 2015, Wells Fargo notified Plaintiffs that their request for a modification of a Loan had been denied because documents needed to address title issues with respect to the Property had not been received. A copy of the May 1, 2015 letter was uploaded into and appears in Wells Fargo's ICMP system. A true and correct copy of the May 1, 2015 letter as it appears in the ICMP system is attached hereto as **Exhibit G**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 21, 2017.

Richard L Penno
Vice President Loan Documentation
Wells Fargo Bank, N.A.
06/21/2017

3

# Exhibit A

# FIXED RATE NOTE

APRIL 5, 2002
*Date*

MERRITT ISLAND
*City*

FLORIDA
*State*

625 BELAIR AVE, MERRITT ISLAND, FL 32953
*(Property Address)*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    82,400.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____ WELLS FARGO HOME MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on JUNE 1, 2002 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payments will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2032      , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, INC. P. O. BOX 4148, FREDERICK, MD 21705-4148 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   548.21.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of the principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

MULTISTATE FIXED     NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT     FORM 3200 1/01
1 of 2     ECO11L  REV. 11/27/01

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorney's fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) herein or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.  Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11.  DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Julie B. O'Steen_ _____ (Seal)
JULIE B. O'STEEN                          -Borrower

(Sign Original Only)

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO HOME MORTGAGE, INC.

By _Joan M. Mills_
   Joan M. Mills,
   Vice President

RCP

# Exhibit B

Return to:
Island Title & Escrow Corp.
2425 N. Courtenay Pkwy. #107
Merritt Island, FL 32953
(321) 453-6099

Return To:
**WELLS FARGO HOME MORTGAGE, INC.**
**FINAL DOCUMENTS X4701-024**
**3601 MINNESOTA DRIVE**
**BLOOMINGTON, MN  55435-5284**



CFN:2002089965      04-11-2002 09:48 am
OR Book/Page:  **4569  /  2929**

*Scott Ellis*
Clerk Of Courts, Brevard County

This document was prepared by:
**SANDY ESTILL**
**WELLS FARGO HOME MORTGAGE, INC.**
**3201 W. WHITE OAKS DRIVE**
**SPRINGFIELD, IL  62704-6560**

| | | |
|---|---|---|
| #Pgs: 19 | #Names: 3 | |
| Trust: 10.00 | Rec: 77.00 | Serv: 0.00 |
| Deed: 0.00 | | Excise: 0.00 |
| Mtg: 288.40 | | Int Tax: 164.80 |

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** *"Security Instrument"* means this document, which is dated **APRIL 5, 2002**
together with all Riders to this document.
**(B)** *"Borrower"* is
**JULIE B. O'STEEN**, A MARRIED WOMAN, JOINED BY HER SPOUSE, CHRISTOPHER B. O'STEEN,

Borrower is the mortgagor under this Security Instrument.
**(C)** *"Lender"* is  **WELLS FARGO HOME MORTGAGE, INC.**

Lender is a **Corporation**
organized and existing under the laws of **THE STATE OF CALIFORNIA**

**FLORIDA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Page 1 of 18          Initials: JBO
                              CDO

**FORM 3010    1/01**

SFL01    Rev 11/02/00



CFN:2002089965
OR Book/Page: 4569 / 2930

Lender's address is

**P. O. BOX 5137, DES MOINES, IA  50306-5137**
Lender is the mortgagee under this Security Instrument.
**(D)** **"Note "** means the promissory note signed by Borrower and dated **APRIL 5, 2002**
The Note states that Borrower owes Lender **EIGHTY-TWO THOUSAND FOUR HUNDRED AND NO/100**
Dollars
(U.S. $ .....**82,400.00**............) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2032**
**(E)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

**(H)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K)** **"Escrow Items"** means those items that are described in Section 3.
**(L)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

CFN:2002089965

OR Book/Page: **4569 / 2931**

**(O)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(P)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the   **County**          of          **BREVARD**
　　　　　　　　 [Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

Parcel ID Number:                                which currently has the address of
**425 BELAIR AVE**                                                      [Street]
　　　　　　　　 **MERRITT ISLAND**      [City], Florida    **32953**    [Zip Code]
("Property Address"):

　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

CFN:2002089965

OR Book/Page: **4569** / **2932**

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

CFN:2002089965
OR Book/Page: 4569 / 2933

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

CFN:2002089965

OR Book/Page: 4569 / 2934

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.



CFN:2002089965
OR Book/Page: 4569 / 2935

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection

CFN:2002089965
OR Book/Page: 4569 / 2936

shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CFN:2002089965
OR Book/Page: 4569 / 2937

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage

CFN:2002089965
OR Book/Page: 4569 / 2938

ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact the the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designed payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designed payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

CFN:2002089965
OR Book/Page: 4569 / 2939

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CFN:2002089965
OR Book/Page: 4569 / 2940

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

CFN:2002089965

OR Book/Page: 4569 / 2941

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.



CFN:2002089965
OR Book/Page: 4569 / 2942

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note,



CFN:2002089965

OR Book/Page: 4569 / 2943

this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CFN:2002089965
OR Book/Page: 4569 / 2944

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default: (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

CFN:2002089965
OR Book/Page: 4569 / 2945

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

KATIE GIERING

_____ (Seal)
JULIE B. O'STEEN                     Borrower
425 BELAIR AVE
MERRITT ISLAND, FL 32953

Sandra A. Isenbletter

CHRISTOPHER B. O'STEEN
425 BELAIR AVE.
MERRITT ISLAND, FL. 32953

CFN:2002089965

OR Book/Page:  4569 / 2946

**STATE OF FLORIDA, BREVARD**                                    **County ss:**

    This foregoing instrument was acknowledged before me this   **APRIL 5, 2002**            by

**JULIE B. O'STEEN** , A MARRIED WOMAN, JOINED BY HER SPOUSE, CHRISTOPHER B. O'STEEN

who is personally known to me or who has produced DRIVER'S LICENSES    as identification.

KATHLEEN GIERING
MY COMMISSION # DD 067055
EXPIRES: October 23, 2005
Bonded Thru Budget Notary Services

Notary Public

CFN:2002089965

OR Book/Page: 4569 / 2947

## EXHIBIT "A"

LOT 510, HAMPTON HOMES UNIT 8, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 16, PAGE 133, PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA.

# Exhibit C



**Trial Period Plan Notice**
**You may be able to make your payments more affordable**
**Call 1-877-458-8418 Ext. 38674 for Immediate Assistance**

October 23, 2014
JULIE O'STEEN                                          Loan No.: ▓▓▓▓▓▓
425  BELAIR AVE
Merritt Island, FL  32953

Dear JULIE O'STEEN,

Wells Fargo Home Mortgage wants to continue to work with you to modify your mortgage and help make your payments more affordable.

**Freddie Mac Loan Modification**
The good news – you may be eligible for a modification offered by Freddie Mac (the owner of your loan). This 480- month modification is designed for borrowers, like you, who for some reason did not meet all of the eligibility criteria for a modification under the federal government's Home Affordable Modification Program (HAMP), or were unable to successfully make payments under HAMP or another modification.

With this modification, you will be required to make new affordable payments during a trial period. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

**What you need to do**
To accept this offer, please call us at the phone number listed on this letter or send in your Trial Period payment, rather than your normal mortgage payment, no later than 15 calendar days from the date listed at the top of this letter. Please note, the 15 day acceptance period could be earlier than the due date noted below.

### Trial Period Plan

|  |
|---|
| 1st payment: **$1,042.19** by **December 1, 2014** |
| 2nd payment: **$1,042.19** by **January 1, 2015** |
| 3rd payment: **$1,042.19** by **February 1, 2015** |

Property value used in the review decision: $ 125,244.00
Total income used to make this decision: $4,133.00

Please note that your trial period may extend beyond the dates provided. For that reason, continue making your trial period payments in the same amount by the same day of each month the trial period payments are listed as above until your home preservation specialist advises that you may move forward with a final modification or that you are no longer eligible for a modification.

Some reasons for the extension could be tied to other liens you have on your property that may be required to be cleared prior to final approval of your modification. For example, we may need to receive a subordination agreement* from the other lenders so that we can maintain our lien position; or if you have a judgment placed on your property you may be required to pay off the lien. Your mortgage may only be modified after we determine all your trial period payments were made on time and you submitted all the required documents, including any title clearance requirements, as described above. If you fail to provide a subordination agreement from another lender or fail to pay off a judgment lien as required, your modification may be denied even if you pay the trial period payments. Also, failure to make all trial period payments as outlined above, including if your trial period payments were extended will result in your Trial Period Plan being denied.

---

The trial payment amounts set forth above include principal, interest, and escrow amounts. After all trial period payments are timely made, your mortgage will be modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) If each payment is not received by Wells Fargo Home Mortgage on or before the date it is due, you will no longer be eligible for a loan modification and your loan will not be modified.

If you do not call to accept the offer within 15 days or send in your first payment by the due date, a foreclosure sale could move forward. We will continue to work with you to help you avoid a foreclosure sale. However, please understand that if you have not yet been referred to foreclosure, that process could begin at any time. If your mortgage has been referred to foreclosure, as part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail, or see steps being taken to proceed with a foreclosure sale of your home. During the trial period, a foreclosure sale will not be held as long as you comply with the terms of the Trial Period Plan and make all your payments on time.

## What you need to know about foreclosure

If your payments are not received by the payment due dates specified in this letter, collection activity and/or foreclosure proceedings may resume and you may see steps being taken in foreclosure proceedings or receive notices from a third-party attorney.

As part of the review, Wells Fargo Home Mortgage used a process to determine which option best matched your circumstances. Once we reviewed and approved you for this program, we stopped reviewing you for other options that were considered less of a match to your circumstances.

## You have the right to appeal this decision

Carefully read over this letter, which states Wells Fargo Home Mortgage's decision. If you believe the decision is incorrect and want to appeal the decision, you may submit your appeal request in writing or by phone.

If you choose to submit your appeal request in writing, we have enclosed an Appeal Request Form for your convenience. Or you can write a letter of your own that explains the reason you disagree with the decision.

## You can initiate an appeal in one of three ways:

1. Fax your appeal request to 1-866-590-8910.

2. Mail your appeal request to:
Wells Fargo Home Mortgage

1000 Blue Gentian Road,
Suite 300 MAC X9999-01N,
Eagan, MN 55121

3. Call 1-877-816-4914 and follow the prompts.

If you choose to submit your appeal request in writing, by fax or mail — using the enclosed form or a letter of your own — please specify which of these two options applies to you:

Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo Home Mortgage will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo Home Mortgage does not receive my additional information by **November 6, 2014**, Wells Fargo Home Mortgage will immediately move forward with a review of the decision.

## Appeal request guidelines:

- If you do not specify your intention for providing additional information, by selecting one of the two options above, we will follow the process described in Option B.
- If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate.



- We must receive your appeal request, with any additional information (as applicable) by **November 6, 2014.**
- After an appeal is initiated, if you selected Option B and we do not receive your additional information by **November 6, 2014,** we will review the decision based on the information we have at that time.
- You may have recently received a separate communication regarding another review we completed. Our decision regarding that review is also appealable, subject to the timelines and guidelines here.
- Be sure to include your loan number on your appeal request and any additional information.
- If you choose to initiate your request by phone, make sure to have your loan number available and follow the phone prompts carefully.

Please note: After we receive your appeal request, you will receive a letter that confirms receipt of your request and outlines next steps in the appeal process. As your home preservation specialist, I remain available to assist you with any questions you may have about this letter, but you must initiate an appeal request in one of the ways listed above.

If you have any questions or if you cannot afford the trial period payments shown above please call the phone number below.

Sincerely,

JAY GEHRT

Home Preservation Specialist
1-877-458-8418 Ext. 38674
Wells Fargo Home Mortgage

---

**Get free counseling to help manage expenses and avoid foreclosure.** Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to **www.hud.gov/offices/hsg/sfh/hcc/fc.** Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

---

Attachments: (1) Frequently Asked Questions and (2) Additional Trial Period Plan Information and Legal Notices (3) Appeal Request Form

\*A subordination agreement is a legal document put in place when a home has two liens, and determines which lien takes priority over the other. The benefit of being in the first lien position is that it prioritizes the loan for repayment in the event the homebuyer goes into default. This agreement is typically put into effect when a homeowner tries to refinance or modify their first mortgage. When a homeowner chooses to refinance or modify the first mortgage, the second mortgage automatically moves up to the first mortgage position – upsetting the original order. In order for the refinance or modification to be finalized, the lender of the second mortgage must agree to subordinate their lien on the new mortgage

Wells Fargo Home Mortgage  is required by the Fair Debt Collection Practices Act to inform you that, as your current account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from a bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or

---



misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**FREQUENTLY ASKED QUESTIONS**   Get the answers you need to some of the most common questions.

**Q.  What is a Freddie Mac Loan Modification?**
A Freddie Mac Loan Modification offers you the ability to modify your loan—helping to make your mortgage more affordable for the life of the loan. This modification was created as an additional loan modification option, and is available to certain borrowers who either did not qualify for a modification under the Home Affordable Modification Program (HAMP), or were unable to successfully make payments under HAMP or other modification. With a Freddie Mac Loan Modification, you still have an opportunity to modify your loan provided you successfully complete a trial period.

**Q.  Why are you offering me this option?**
Because you were unable to qualify for HAMP or were unable to successfully make payments under HAMP, we want to continue to work with you to determine a long-term solution. We know many homeowners are struggling with their mortgage payments and need assistance. That's why we are offering you the opportunity to qualify for a Freddie Mac Loan Modification. Our goal is to help make your mortgage more affordable, and most importantly, help you keep your property and avoid foreclosure.

**Q.  What are the benefits of a Freddie Mac Loan Modification?**
A Freddie Mac Loan Modification offers you a long-term solution to make your mortgage more affordable.

**Q.  If I didn't qualify for a modification under HAMP, will I qualify for a Freddie Mac Loan Modification?**
The requirements for a Freddie Mac Loan Modification have been designed specifically to assist borrowers like you, who were unable to qualify for a modification through HAMP or who were not able to successfully make payments on a prior modification.

**Q.  Will I still receive incentive compensation like the HAMP program provides?**
No. A Freddie Mac Loan Modification does not offer incentive compensation for borrowers. The borrower incentive compensation is only available to borrowers who were eligible/qualified for a modification under HAMP.

**Q.  Is there a trial period I have to complete?**
Yes. There is a trial period for the Freddie Mac Loan Modification. You will be required to complete a trial period prior to entering into a Loan Modification Agreement. Your loan will not be modified until you successfully complete the Trial Period Plan and you enter into a Loan Modification Agreement.

**Q.  Why is there a trial period?**
The trial period offers you immediate payment relief (and could prevent a foreclosure sale) and gives you time to make sure you can manage the lower monthly mortgage payment. Note: This is only a temporary Trial Period Plan. Your existing loan and loan requirements remain in effect and unchanged during the trial period.

**Q.  When are my trial period payments due?**
Your payment amount and the day each month that your payment is due during the trial period is in this package.

**Q.  What happens if I can't afford the new payments?**
If you do not make the specified trial period payments in full in the month when due, you will not qualify for a modification and will not be allowed to enter into a Loan Modification Agreement. If you successfully complete the trial period and enter into a Loan Modification Agreement, you will no longer be eligible for the modified payment terms if you are 60 days late within the first 12 months of the modification. If that occurs, we will look at other options to resolve your mortgage delinquency (a short sale, deed-in-lieu of foreclosure, or a foreclosure). If an alternative solution cannot be found, we will need to commence or continue foreclosure proceedings.



**FREQUENTLY ASKED QUESTIONS**   Get the answers you need to some of the most common questions.

**Q.  What happens if I misstate or misrepresent my information/documentation?**

If you have intentionally misrepresented any fact(s) in connection with any of the documentation you have submitted to demonstrate your status, financial information or hardship, the Trial Period Plan and any Loan Modification Agreement may be cancelled (and we may pursue foreclosure proceedings). Additionally, knowingly submitting false information may violate federal law.

**Q.  What else should I know about this offer?**

- To accept this offer, call us at the phone number listed above no later than 15 calendar days from the date listed at the top of this letter or send in your new payment by the due date, as listed above, instead of your normal monthly mortgage payment.

- Your credit score may be affected by accepting a Trial Period Plan or modification. When you become past due on your mortgage payments, it's important to understand that the actions you take to correct the situation can affect your credit score. If you choose a loan modification, your credit score could be negatively impacted during the Trial Period Plan, but it may not be as impacted as an ongoing series of late payments or foreclosure. During that process, we are required by law to continue to report the delinquency status of your loan to the credit reporting agencies as "paying under a partial or modified payment agreement". When you are approved for a loan modification, the modification process is complete and is recorded on your credit report as "loan modified' as long as you make your modified payments on time.  Keep in mind that the degree of impact to your credit score depends on your overall credit circumstances and is different for each individual. The credit score could remain unchanged, increase or decrease. For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

- You will not be charged any fees for this Trial Period Plan or final modification.

- If your loan is modified, we will waive all unpaid late charges.

- After your modification is complete, if your mortgage loan becomes delinquent, you may not be eligible for another mortgage loan modification.

- After your modification is complete, you have the ability to prepay your mortgage loan without any restrictions or penalties.

**Q.  How was my new payment in the trial period determined?**

Your trial period payment is based upon a variety of factors including your verified income, current value of your property, unpaid loan balance and amounts past due. Freddie Mac uses this information to provide the most affordable terms for you and which should be sufficient to pay your modified principal and interest due on your modified loan. Your trial period payments include escrow amounts to cover your property taxes, insurance premiums, and other permissible escrow fees based on our current escrow analysis, including any homeowners' association dues. Your modified monthly payment may change, if your property taxes and insurance premiums change, as permitted by law. If you did not have an escrow account before, you will be required to establish an escrow account for the payment of such escrow amounts. The timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage. Your loan has an escrow shortage of **$4,129.80**; this can either be paid in a lump sum when the loan is modified or over the next **5** years (or **60** months) in an amount of **$68.83** per month in addition to your modified monthly mortgage payment. If you wish to pay the total shortage as a lump sum, please contact us at **1-877-458-8418 Ext. 38674.**

**Q.  When will I know if my loan can be modified and how will the modified loan balance be determined?**

Once you make all of your trial period payments on time, we will send you a Loan Modification Agreement detailing the terms of the modified loan. The Loan Modification Agreement will become effective once you and we have signed it. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment.

**Q. Will my interest rate and principal and interest payment be fixed after my loan is modified?**
Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage. Your new monthly payment will also include an escrow for property taxes, hazard insurance and other escrowed expenses, but your servicer will separately notify you of the escrow amount to include with your monthly payment. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses increases, your monthly payment will increase as well.

## Additional Trial Period Plan Information and Legal Notices

The terms of this offer are accepted and the terms of your Trial Period Plan are effective on the day you make your first trial period payment, provided you have paid it on or before **December 1, 2014**. By accepting this offer, you and we agree that:

**You are certifying that all information you previously provided, e.g., regarding your status, income and expenses, and hardship, is still true and correct.**

- You certify under penalty of perjury that all of the written information you previously provided to Servicer in the Request for Modification and Affidavit signed by you in connection with the Making Home Affordable Program (HAMP) continues to be true and correct. This includes, among other things, information about your status and the status of the property, your income and expenses, and your hardship. You understand that Servicer is relying on your certification in offering you the Trial Period Plan and any Loan Modification Agreement. If there have been any changes in the information you provided, you must contact Servicer at **1-877-458-8418 Ext. 38674** to discuss whether the changes affect your Trial Period Plan or eligibility for a loan modification. You must have this discussion before you send in your first trial period payment.

**We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the Trial Period Plan.**

- Any pending foreclosure action or proceeding may be immediately resumed if you fail to comply with the terms of the Trial Period Plan or do not qualify for a modification. No new notice of default, intent to accelerate, acceleration or similar notice will be necessary to continue the foreclosure action, and all these notices are waived to the extent permitted by applicable law.

**During the trial period, we may accept and post your trial period payments to your account and it will not affect foreclosure proceedings that have already been started.**

- You agree that we may hold the trial period payments in an account until sufficient funds are in the account to pay each of your monthly trial period payment obligations. You also agree that we will not pay you interest on the amounts held in the account. Any amounts remaining at the end of the trial period will be applied to any outstanding amounts that you owe at the end of the trial period reducing the amount that will otherwise be added to the principal balance of your modified loan.
- Our acceptance and posting of your new payment during the trial period will not be deemed a waiver of the acceleration of your loan or foreclosure action and related activities, and shall not constitute a cure of your default under your loan unless the payments are sufficient to completely cure your entire default under your loan.

**If your monthly payment did not include escrows for taxes and insurance, you are now required to establish an escrow account for these items.**

- You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

**Your current loan documents remain in effect; however, you may make the trial period payments instead of the payments required under your loan documents.**

- You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

---




**The Trial Period Plan notice will be rescinded if an error is detected.**

- You agree that if an error in the terms of the Trial Period Plan or your eligibility is detected after issuance of the Trial Period Plan notice, the Trial Period Plan will be void and of no legal effect upon notice to you of such error. You understand that a corrected Trial Period Plan will be provided to you if it is determined that you remain eligible for a loan modification after correction of the error.





# Appeal Request Form

Carefully read over the letter that came with this form, which states Wells Fargo Home Mortgage's decision. If you believe our decision is incorrect and want to appeal the decision, we recommend you use this form to submit a written appeal.

## Important:

- We must receive your written request for an appeal or a phone-initiated appeal request by **November 6, 2014**, or we will not move forward with a review of the decision. While not required, please provide any additional information (as applicable) that will help us look into your request.
- If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate in your explanation below.

Please explain the reason you disagree with the decision.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Select and check the box that best applies to your request:**

[ ] **Option A.** I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo Home Mortgage will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

[ ] **Option B.** I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo Home Mortgage does not receive my additional information by **November 6, 2014**, Wells Fargo Home Mortgage will immediately move forward with a review of the decision.



**Please note:** If you do not specify your intention for providing additional information by selecting one of these two options above, Wells Fargo Home Mortgage will follow the process described in Option B.

Be sure to include your loan number on any supporting documents.

JULIE O'STEEN
Loan number: 0820754
Primary contact phone number: _____
Other contact phone numbers: _____
_____

Best day and time to call: _____

## Mail your appeal request to:

Wells Fargo Home Mortgage
1000 Blue Gentian Road
Suite 300 MAC X9999-01N
Eagan, MN 55121

## Or fax your appeal request to:

1-866-590-8910

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. ©2014 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801



**JULIE O'STEEN**
**425   BELAIR AVE**
**Merritt Island, FL  32953**

Loan Number: ▮▮▮▮▮

Payment Amount Due: $1,042.19
Payment Due Date: December 1, 2014

Wells Fargo Home Mortgage
Suite L-2-200
1200 West 7th Street
Los Angeles, CA  90017

---

**JULIE O'STEEN**
**425   BELAIR AVE**
**Merritt Island, FL  32953**

Loan Number: ▮▮▮▮▮

Payment Amount Due: $1,042.19
Payment Due Date: January 1, 2015

Wells Fargo Home Mortgage
Suite L-2-200
1200 West 7th Street
Los Angeles, CA  90017

---

**JULIE O'STEEN**
**425   BELAIR AVE**
**Merritt Island, FL  32953**

Loan Number: ▮▮▮▮▮

Payment Amount Due: $1,042.19
Payment Due Date: February 1, 2015

Wells Fargo Home Mortgage
Suite L-2-200
1200 West 7th Street
Los Angeles, CA  90017

---



# EXHIBIT D



*WELLS FARGO HOME MORTGAGE*
*RETURN MAIL SERVICES*
*PO BOX 10368*
*DES MOINES IA 50306-0368*

10/31/14

██████████████  ████         HP404 591
KAUFMAN, ENGLETT & LYND, PLLC#
150 N. ORANGE AVE., STE. 100
ORLANDO, FL 32801-2317

| Important Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | ██████████ |
| Property address: | 425 Belair Ave |
| | Merritt Island FL 32953 |

Subject: Action required to resolve title issue(s)
Loan number: ██████████
Property address: 425 Belair Ave
                  Merritt Island FL 32953

Dear Julie B O'Steen:

We're writing to let you know that we're unable to complete the final modification of your loan until the title issue(s) on the above property are resolved. We've enclosed a copy of the property title report for your review.

**What you need to do**
To move forward with your loan modification you need to:

1. Complete the Statement of Information Form and the Authorization to Release Information Form described in Section I below, and we'll be able to move forward to obtain information that may prove the title issue(s) have been resolved. Please note that we may require additional proof as indicated in Section II of this letter.
2. Continue making your trial period payments in the same amount by the same day of each month. Continue to make your trial period payments until your home preservation specialist advises that you may move forward with a final modification or that you are no longer eligible for a modification.

Please provide us with the required documents indicated below.

**Fax the requested documents to us within 30 business days** of the date of this letter. Be sure to complete, sign, and date (as applicable) all required documents and fax to: **1-866-590-8910**.

**Important:** If you are unable to send us the required documentation within 30 days of the date of this letter, please contact me immediately at the number below my signature. Failure to return the requested documents within the stated timeframe may result in your modification being denied.







HP404 591
██████████

| Account Information | |
|---|---|
| Loan number: | ▓▓▓▓▓ |
| Property address: | 425 Belair Ave<br>Merritt Island FL 32953 |

## Section I: Forms you must complete to expedite the process

**A. Statement of Information Form**

In searching your title we may encounter judgments, bankruptcies, divorces, and/or income tax liens against persons with the same or similar names to yours. Research into such matters must be conducted and resolved. The information you and the co-borrower provide can help eliminate matters not directly affecting you or the property.

**B. Authorization to Release Information Form**

If the mortgage to be modified and recorded will not remain in first lien position, we need to understand the subordination requirements of other lien holders on your property. In order to contact each lien holder and obtain their subordination requirements, we need your authorization. If you do not complete and return the ATR you will be responsible for providing the completed subordination agreement to our department before your modification can be finalized.

## Section II: Required documents to send

Please send all documents marked below.

**A. The requested mortgage to be modified is not in first lien position**

In order for us to understand the subordination requirements of other lien holders on your property, you will need to provide the following checked document(s):

X      Subordination requirements*

           Please complete the attached ATR (see B above). If you do not complete and return the ATR you will be responsible for providing the completed subordination agreement to our department before your modification can be finalized.

           Important note: See disclaimer for definition of subordination.

           After you complete your Trial Period Plan, we will require you to provide signed subordination agreement(s)* from each lien holder on your property. At that time, we will contact you with instructions.

**B. Additional mortgage judgments/liens exist on the property**

To clear any judgments and/or liens indicated on the attached title report, please provide the following checked documents:

X      Notice of Release of Mortgage or Discharge of Judgment/Lien
X      Recorded Discharge of Mortgage/Satisfaction of Record
X      Subordination Agreement*







HP404 591

| **Account Information** | |
|---|---|
| Loan number: | ▓▓▓▓▓ |
| Property address: | 425 Belair Ave<br>Merritt Island FL 32953 |

## C. Bankruptcy status of the property

To understand the bankruptcy status of the property, please provide the following checked documents:

Official release from bankruptcy
Document from bankruptcy court stating that we can proceed with
the loan modification on the property

## D. Property ownership

To ensure proper ownership of the property, please provide the following checked documents:

If the property is in a Trust, provide copies of the Trust documents.
If vested owners on the Title do not match the owners listed on the
Security Instrument (Deed of Trust), provide one of the following
documents indicating why there is a difference in name(s):

- Divorce Decree
- Certificate of Death
- Power of Attorney
- Other document

## E. Other document required

In addition to the document(s) indicated above, please provide the following documentation:

Thank you for your prompt attention to this matter. If you have any questions, please feel free to contact me directly at the number listed below.

Sincerely,

*Jay Gehrt*

Jay Gehrt
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-877-458-8418 ext. 38674
Fax: 1-866-590-8910

## Contact us

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

Enclosure(s)







HP404 591

| Account Information | |
|---|---|
| Loan number: | ████████ |
| Property address: | 425 Belair Ave<br>Merritt Island FL 32953 |

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

* A subordination agreement is a legal document used to make the claim of one party junior to (or inferior to) a claim in favor of another. It is generally used to grant first lien status to a lien holder who would otherwise be secondary to another party, with the approval of the party that would otherwise have first lien. Typically a subordination arises when there are two existing mortgages, a first mortgage and a second mortgage, and the mortgagor intends to refinance or modify the first mortgage. If the holder of the second mortgage does not subordinate the lien of its mortgage to the new mortgage, the new lender will not refinance or modify the first mortgage. However, the second mortgage holder does not want to release its mortgage and re-file, due to additional costs and priority problems, so it will subordinate its lien to the lien of the replacement mortgage.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2014 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801







HP404 591

# Statement of Information Form

**Completion of this form will expedite your order and will help protect you.**
In searching your title we may encounter judgments, bankruptcies, divorces, and/or income tax liens against persons with the same or similar names to yours. Such matters cloud the title to your property unless eliminated. The information you and the co-borrower provide, can promptly eliminate all matters not directly affecting you or the property being searched, avoid any delay in your transaction, and provide you with the most efficient service possible.

**Confidential information statement to be used in connection with mortgage account number:** _____

**Street address of the property in this transaction** (if none, leave blank)

Address: _____

## Borrower information

Name: _____

Birth place: _____ Birth date: _____

Lived at this address since: _____

Last four digits of Social Security number: _____

Driver's license number: _____

Married on _____ at _____

Have you ever been known by another name? ☐ Yes ☐ No

If yes, what name? _____

## Co-borrower information

Name: _____

Birth place: _____ Birth date: _____

Lived at this address since: _____

Last four digits of Social Security number: _____

Driver's license number: _____

Married on _____ at _____

Have you ever been known by another name? ☐ Yes ☐ No

If yes, what name? _____

## Residence(s) for last ten years

U.S. residence since: _____

Address: _____ From: _____ To: _____

Address: _____ From: _____ To: _____

Address: _____ From: _____ To: _____

## Occupation(s) for the last ten years

Borrower present occupation: _____ No. of years: _____

Firm name: _____

Address: _____

Borrower prior occupation: _____ No. of years: _____

Firm name: _____

Address: _____

Co-borrower present occupation: _____ No. of years: _____

Firm name: _____

Address: _____

Co-borrower prior occupation: _____ No. of years: _____

Firm name: _____

Address: _____

## Former marriages (Note: If no former marriages, write none.)

Name of borrower's former spouse: _____

If deceased, what date: _____ Where: _____

Name of co-borrower's former spouse: _____

If deceased, what date: _____ Where: _____

## Financial information

Have you ever filed bankruptcy? ☐ Yes ☐ No

Is any portion of the new loan funds to be used for construction? ☐ Yes ☐ No

If yes, which county? _____

## Borrower signatures

I declare under penalty of perjury that the foregoing is true and correct.

Borrower signature _____

Date _____

Borrower phone _____ Work phone _____

Co-borrower signature _____

Date _____

Co-borrower phone _____ Work phone _____

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2012 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Statement of Information Form 4/12







HP404 591

**Authorization to Release Information**
Subordinate Lien Holders

10/31/14

**Borrower name(s):**   Julie B O'Steen

**Property address:**   425 Belair Ave
                        Merritt Island FL 32953

**If you are working with an attorney and want us to work with them, provide the following:**

Attorney name: _____

Law firm name: _____

Contact phone number: _____

**Loan number:** ▬▬▬▬

I/we hereby authorize all mortgagees and lien holders on the above mentioned property to release to Wells Fargo Home Mortgage any and all mortgage and loan account information required to process subordination agreements to ensure Wells Fargo Home Mortgage maintains first lien position.

I/we also authorize Wells Fargo Home Mortgage to share information with all mortgagees and lien holders for purposes of modifying my/our Wells Fargo Home Mortgage first lien loan.

The expiration date for this authorization is one year from the date it is granted.

**Authorized signature(s):**
I/we hereby accept responsibility for all actions taken on this loan by the party(ies) named above and agree that if I/we wish to discontinue the authorization noted on this form. I/we will notify Wells Fargo Home Mortgage in writing or by calling the number provided in the accompanying letter.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Borrower signature | Date | Last four digits of SSN or TIN |
| _____ | _____ | _____ |
| Co-borrower signature | Date | Last four digits of SSN or TIN |
| _____ | _____ | _____ |
| Co-borrower signature | Date | Last four digits of SSN or TIN |
| _____ | _____ | _____ |
| Co-borrower signature | Date | Last four digits of SSN or TIN |

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2013 Wells Fargo Bank, N. A. All rights reserved. Equal Housing Lender.
NMLSR ID 399801









## *Loss Mitigation Title Services*
*3 First American Way, Santa Ana, CA 92707 or*
*P.O. Box 27670, Santa Ana, CA 92799*

### PROPERTY INFORMATION REPORT

**WELLS FARGO HOME MORTGAGE**
**1100 CORPORATE CENTER DRIVE**
**MAC D0204-042**
**RALEIGH, NC 27607**
**ATTN: RALBSGTITLESUPPORT**

DATE ISSUED:  10/24/2014

ORDER NO.:
REFERENCE:  

NAME:                                   **JULIE B O'STEEN**
PROPERTY ADDRESS:          **425 BELAIR AVENUE, MERRITT ISLAND, FL 32953**
COUNTY:                             **BREVARD**
AS OF THE DATE HEREOF:   **OCTOBER 10, 2014**

**A.** THE LAST RECORDED DOCUMENT PURPORTING TO TRANSFER TITLE TO THE LAND DESCRIBED HEREIN SHOWS THE FOLLOWING PURPORTED OWNER:

### JULIE BARBARA O'STEEN

| | |
|---|---|
| Means of conveyance: | **WARRANTY DEED** |
| Grantor: | **HENRY J. FEHSE AND MARION C. FEHSE, HUSBAND AND WIFE** |
| Grantee: | **JULIE BARBARA O'STEEN** |
| Date recorded: | **DECEMBER 20, 1999** |
| Book: | **4103** |
| Page: | **0726** |

**B.** ACCORDING TO THE LATEST EQUALIZED ASSESSMENT ROLL THE FOLLOWING AD VALOREM TAX INFORMATION IS SHOWN:

ASSESSED VALUATION:

LAND: **$.00**      IMPROVEMENTS: **$48,550.00** EXEMPTIONS: **$25,000.00**

1.    For informational purposes only: General and special taxes for the current tax year 2014.

BREVARD COUNTY TAX COLLECTOR
GOVT. COMPLEX
400 SOUTH ST. 6TH FLOOR
TITUSVILLE, FL 32780
321-264-6930

PAGE 1



Annual Installment:    $766.68                NOT PAID
                         DUE BY:                03/31/2015
                         PENALTY DATE:       04/01/2015
                         PAYOFF AMOUNT:     $N/A
                         AMOUNT IS GOOD THROUGH: N/A

DISCOUNT DATES: The discount amount to pay by 11/30/2014 is $736.01.

| | |
|---|---|
| NO | Homeowners Exemption |
| YES | Homestead Exemption |
| NO | Owner Occupy |
| NO | Primary Res Exemption |
| NO | Principal Res Exemption |
| NO | Residential Exemption |
| NO | Agricultural Exemption |
| NO | Basic Star |
| NO | Disabled Exemption |
| NO | Disabled Vet Exemption |
| NO | First Dollar Credit |
| NO | Lottery Credit |
| NO | Mortgage Exemption |
| NO | Over 65 Exemption |
| NO | Roll Back Credit |
| NO | School Credit |
| NO | Veteran Exemption |

Is there an unattached mobile home identified?     N

A.P.No:        24-36-25-51-00000.0-0510.00
TAX ID:        2418898

**C.** OFFICIAL RECORDS OF THE COUNTY WHERE THE LAND IS LOCATED SHOWS THE FOLLOWING UNRELEASED DOCUMENTS AFFECTING THE LAND:

2. A mortgage to secure an original principal indebtedness of **$82,400.00**, and any other amounts or obligations secured thereby, recorded **APRIL 11, 2002**, as **BOOK 4569 PAGE 2929** of Official Records.
Dated:              **APRIL 05, 2002**
Mortgagor:     **JULIE B. O'STEEN, A MARRIED WOMAN, JOINED BY HER SPOUSE, CHRISTOPHER B. O'STEEN**
Mortgagee:     **WELLS FARGO HOME MORTGAGE, INC.**

3. A mortgage to secure an original principal indebtedness of **$100,000.00**, and any other amounts or obligations secured thereby, recorded **FEBRUARY 03, 2006**, as **BOOK 5600 PAGE 1524** of Official Records.

Dated:                      **JANUARY 09, 2006**
Mortgagor:            **JULIE BARBARA O'STEEN AKA JULIE O'STEEN AND**
                              **CHRISTOPHER B O'STEEN, WIFE AND HUSBAND**
Mortgagee:            **SUNTRUST BANK**

4. A mortgage to secure an original principal indebtedness of **$42,000.00**, and any other amounts or obligations secured thereby, recorded **MAY 01, 2014**, as **BOOK 7116 PAGE 2975** of Official Records.

Dated:                      **APRIL 20, 2014**
Mortgagor:            **JULIE O'STEEN**
Mortgagee:            **FLORIDA HOUSING FINANCE CORPORATION**

JUDGMENTS/LIENS/ADDITIONAL INFORMATION

5. A judgment, a certified copy of which has filed/recorded **JANUARY 27, 2011** as **BOOK 6322 PAGE 2953** of Official Records.

Court:                     **IN THE COUNTY COURT OF THE NINTH JUDICIAL**
                              **CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA**
Creditor:               **GRAYBAR ELECTRIC COMPANY, INC. A FOREIGN**
                              **CORPORATION**
Debtor:                  **EGAN ELECTRIC, INC., A FLORIDA CORPORATION,**
                              **NATHAN S. KILBURN, INDIVIDUALLY, AND**
                              **CHRISTOPHER O'STEEN, INDIVIDUALLY**
Amount:                 **$10,512.36** and any other amounts due thereunder.

6. A judgment, a certified copy of which has filed/recorded **MARCH 03, 2011** as **BOOK 6343 PAGE 2458** of Official Records.

Court:                     **IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL**
                              **CIRCUIT IN AND FOR LAKE COUNTY, FLORIDA**
Creditor:               **CITY ELECTRIC SUPPLY COMPANY, A FLORIDA**
                              **CORPORATION**
Debtor:                  **EGAN ELECTRIC, INC., A FLORIDA CORPORATION,**
                              **AND CHRISTOPHER O'STEEN, JOINTLY AND SEVERALLY**
Amount:                 **$34,965.25** and any other amounts due thereunder.

7. A judgment, a certified copy of which has filed/recorded **SEPTEMBER 28, 2011** as **BOOK 6460 PAGE 150** of Official Records.

Court:                     **IN THE COUNTY COURT IN THE EIGHTEENTH JUDICIAL**
                              **CIRCUIT IN AND FOR BREVARD COUNTY, FLORIDA**
Creditor:               **ARROW FINANCIAL SERVICES, LLC ASSIGNEE OF**
                              **WASHINGTON MUTUAL BANK, A CORPORATION**
Debtor:                  **CHRISTOPHER OSTEEN**
Amount:                 **$2,009.93** and any other amounts due thereunder.

8. A judgment, a certified copy of which has filed/recorded **APRIL 27, 2012** as **BOOK 6588 PAGE 308** of Official Records.

Court:                     **IN THE CIRCUIT COURT OF THE THIRTEENTH**
                              **JUDICIAL CIRCUIT STATE OF FLORIDA IN AND FOR**
                              **HILLSBOROUGH COUNTY, CIVIL DIVISION**
Creditor:               **CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., A**
                              **DELAWARE CORPORATION, AUTHORIZED TO TRANSACT**
                              **BUSINESS IN FLORIDA, D/B/A RAYBRO ELECTRIC**
                              **SUPPLIES**
Debtor:                  **EGAN ELECTRIC, INC., A FLORIDA CORPORATION,**
                              **AND CHRISTOPHER O'STEEN, INDIVIDUALLY**
Amount:                 **$18,277.75** and any other amounts due thereunder.

PAGE 3

NO TITLE ISSUES



**D. LEGAL DESCRIPTION:**
The land referred to in this policy is situated in the **STATE OF FLORIDA, COUNTY OF BREVARD, CITY OF MERRITT ISLAND**, and described as follows:

LOT 510, HAMPTON HOMES UNIT 8, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 16, PAGE 133 OF THE PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA. SUBJECT TO EASEMENTS, RESTRICTIONS, RESERVATIONS, AND LIMITATIONS OF RECORD, IF ANY. TOGETHER WITH ALL THE TENEMENTS, HEREDITAMENTS AND APPURTENANCES THERETO BELONGING OR IN ANY WISE APPERTAINING.



## LIMITATION OF LIABILITY

THIS REPORT CONTAINS INFORMATION OBTAINED FROM PUBLIC RECORDS IN THE COUNTY WHERE THE LAND IS LOCATED WHICH GIVES NOTICE OF MATTERS RELATING TO SAID LAND. EASEMENTS, RIGHTS OF WAY AND CC&R'S ARE NOT REPORTED. THIS REPORT IS NOT INTENDED TO BE, NOR SHOULD IT BE RELIED UPON AS A LEGAL OPINION OF TITLE OR ANY FORM OF TITLE INSURANCE. AS A PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, THE RECIPIENT AGREES THAT FIRST AMERICAN TITLE INSURANCE COMPANY'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE ARISING BY REASON OF ANY ERROR OR OMISSION CONTAINED HEREIN SHALL BE LIMITED BY THIS PARAGRAPH. THIS REPORT MAY MAKE REFERENCE TO INVOLUNTARY LIENS, JUDGMENTS OR OTHER DOCUMENTS OF RECORD WHEREIN THE DEBTOR'S NAME IS SIMILAR OR IDENTICAL TO THAT OF THE SUBJECT PROPERTY OWNER(S), BUT IS NOT, IN FACT, THE SAME PERSON(S). AS SUCH, ADDITIONAL INFORMATION MAY BE REQUIRED TO CONFIRM THE IDENTITY OF THE DEBTOR(S) AS THE PROPERTY OWNER(S). THIS REPORT SHALL CONSTITUTE AN OFFER TO ISSUE A MORTGAGE PRIORITY GUARANTEE WHEN A MORTGAGE PRIORITY GUARANTEE IS REQUESTED AND AVAILABLE. IF A MORTGAGE PRIORITY GUARANTEE IS ISSUED, FIRST AMERICAN TITLE INSURANCE COMPANY'S SOLE LIABILITY WILL BE UNDER AND CONTROLLED BY THE TERMS AND CONDITIONS OF THE MORTGAGE PRIORITY GUARANTEE.



# Exhibit E

*WELLS FARGO HOME MORTGAGE*
*RETURN MAIL SERVICES*
*PO BOX 10368*
*DES MOINES IA 50306-0368*

02/03/15

████████████████  ██████       HP407 591
JULIE B O'STEEN
425  BELAIR AVE
MERRITT ISLAND, FL  32953-6152

| Important Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | ████████ |
| Property address: | 425 Belair Ave |
| | Merritt Island FL 32953 |

Subject: Action required to resolve title issue(s)
   Loan number: ████████
   Property address: 425 Belair Ave
                     Merritt Island FL 32953

Dear Julie B O'Steen:

We are contacting you again as additional documents are needed or have not been received as previously requested to complete the final modification of your loan. We've enclosed a copy of the property title report for your review.

## What you need to do
To move forward with your loan modification you need to:

1. Continue making your trial period payments in the same amount by the same day of each month you currently make your trial period payments until your Home Preservation Specialist advises that you may move forward with a final modification or that you are no longer eligible for a modification.

2. Provide us with documented proof that the title issue(s) described in the following section have been resolved to move forward with your loan modification.

Be sure to complete, sign, and date (as applicable) all required documents and fax to: **1-866-590-8910**.

Failure to return the requested documents may result in your modification being denied.

## Required documents to send

Please send all documents marked below.

**A. The requested mortgage to be modified is not in first lien position**
   In order for us to understand the subordination requirements of other lien holders on your property, you will need to provide the following checked documents(s):



HP407 591





| Account Information | |
| --- | --- |
| Loan number: | ▮▮▮▮▮▮ |
| Property address: | 425 Belair Ave<br>Merritt Island FL 32953 |

() Subordination requirements

Please complete the attached Authorization To Release Form (ATR). If you do not complete and return the ATR you will be responsible for providing the completed subordination agreement* to our department before your modification can be finalized.

Important note: See disclaimer for definition of subordination.

**B. Additional mortgage judgments/liens exist on the property**
To clear any judgments and/or liens indicated on the attached title report, please provide the following checked documents:

() Notice of Release of Mortgage or Discharge of Judgment/Lien

() Recorded Discharge of Mortgage/Satisfaction of Record

() Subordination Agreement*

**C. Bankruptcy status of the property**
To understand the bankruptcy status of the property, please provide the following checked documents:

() Official release from bankruptcy

() Document from bankruptcy court stating that we can proceed with the loan modification on the property

**D. Property ownership**
To ensure proper ownership of the property, please provide the following checked documents:

() If the property is in a Trust, provide copies of the Trust documents.

() If vested owners on the Title do not match the owners listed on the Security Instrument (Deed of Trust), provide one of the following documents indicating why there is a difference in name(s):
- Divorce Decree
- Certificate of Death
- Power of Attorney
- Other document

**E. Other document required**
In addition to the document(s) indicated above, please complete and sign the enclosed document below if checked:

(x) Non-Identity Affidavit & Exhibit A (Note: You must have this







HP407 591

| Account Information | |
| --- | --- |
| Loan number: | ▓▓▓▓▓ |
| Property address: | 425 Belair Ave<br>Merritt Island FL 32953 |

document notarized)

()   Authorization to Release Information Form

Thank you for your prompt attention to this matter. If you have any questions, please feel free to contact me directly at the number listed below.

Sincerely,

*Christopher Trulson*

Christopher Trulson
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-877-458-8418 ext. 38862
Fax: 1-866-590-8910

Enclosure(s)

* A subordination agreement is a legal document used to make the claim of one party junior to (or inferior to) a claim in favor of another. It is generally used to grant first lien status to a lien holder who would otherwise be secondary to another party, with the approval of the party that would otherwise have first lien. Typically a subordination arises when there are two existing mortgages, a first mortgage and a second mortgage, and the mortgagor intends to refinance or modify the first mortgage. If the holder of the second mortgage does not subordinate the lien of its mortgage to the new mortgage, the new lender will not refinance or modify the first mortgage. However, the second mortgage holder does not want to release its mortgage and re-file, due to additional costs and priority problems, so it will subordinate its lien to the lien of the replacement mortgage.

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2015 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801







HP407 591

# NON-IDENTITY AFFIDAVIT FORM INSTRUCTIONS

If a Borrower or Vested Owner disputes any of the liens/judgments on Title, please complete and execute the attached Non-Identity Affidavit.

## PLEASE FOLLOW THESE STEPS EXACTLY OR THE FORM WILL NOT BE VALID:

1. Fill in Name, SSN and "America's Servicing Company" on the three blank lines on this form (respectively).

2. In front of a Notary Public, sign name on the blank line below the text "Further Affiant Sayeth Not"; have the Notary complete the bottom portion of the form.

3. On each page(s) included with the Non-Identity Affidavit, please complete the following items:

   A. Write "Exhibit A" at the top of each page that references judgments and liens.
   B. Notate each item as either "mine" or "not mine".
   C. Initial and date each item.
   D. Write your loan number at the top of each page and fax the entire form (not including this instruction page) to 1-866-590-8910 as soon as possible.

Please contact your SPOC with any questions about this form.







HP407 591

<u>NON-IDENTITY AFFIDAVIT</u>

STATE OF:_____§

COUNTY OF:_____§

BEFORE, ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED _____, HEREINAFTER CALLED "AFFIANT", WHO, BEING DULY SWORN ON OATH DOES DEPOSE AND STATE:

1.  THAT AFFIANT IS, THE OWNER OF THE FOLLOWING DESCRIBED PROPERTY TO WIT:

2.  THAT AFFIANT IS MAKING THIS AFFIDAVIT FOR THE PURPOSE OF CLARIFYING AFFIANT'S IDENTITY AS TO CERTAIN MATTERS APPEARING OF RECORD AND AFFECTING TITLE TO THE ABOVE DESCRIBED PROPERTY.    THAT AFFIANT, HAVING REVIEWED THE INSTRUMENT(S) OF RECORD REFERENCED BELOW AND ATTACHED AS EXHIBIT "A" HERETO:

HEREBY ACKNOWLEDGES AND AFFIRMS THAT:

  A)  AFFIANT IS NOT ONE AND THE SAME PERSON AS ANY OF THE PERSONS AS DESCRIBED IN SAID INSTRUMENT(S).

  B)  AFFIANT HAS NOT RESIDED AT ANY OF THE ADDRESSES SET FORTH IN SAID INSTRUMENT(S).

  C)  AFFIANT DOES NOT KNOW AND IS NOT FAMILIAR WITH ANY OF THE CO-DEFENDANTS WHICH MAY BE NAMED IN SAID INSTRUMENT(S).

3.  THAT AFFIANT'S SOCIAL SECURITY NUMBER IS _____, WHICH IS NOT THE SAME AS THE SOCIAL SECURITY NUMBER(S) APPEARING IN THE ABOVE REFERENCED INSTRUMENT(S).

AFFIANT ACKNOWLEDGES THAT THIS AFFIDAVIT WILL BE RELIED UP ON BY _____ TO PURCHASE, LEASE OR LEND MONEY SECURED BY A MORTGAGE ON THE ABOVE-DESCRIBED PROPERTY, AND BY FIRST AMERICAN TITLE INSURANCE COMPANY TO ISSUE ITS POLICY OF TITLE INSURANCE INSURING SAID TRANSACTION WITHOUT EXCEPTION FOR THE AFOREMENTIONED MATTERS OF RECORD.

AFFIANT FURTHER STATES THAT AFFIANT IS FAMILIAR WITH THE NATURE OF OATH, AND WITH THE PENALTIES AS PROVIDED BY THE LAWS OF THE STATE OF AFORESAID FOR FALSELY SWEARING TO STATEMENTS MADE IN AN INSTRUMENT OF THIS NATURE.  AFFIANT FURTHER CERTIFIES THAT AFFIANT HAS READ, OF HAS HAD READ TO AFFIANT, THE FULL FACTS OF THIS AFFIDAVIT AND UNDERSTANDS ITS CONTENTS.

FURTHER AFFIANT SAYETH NOT.

_____

STATE OF _____

COUNTY OF _____

ON THIS THE _____ DAY OF _____, 20___, BEFORE ME, _____,
PERSONALLY APPEARED _____ (NOTARY PUBLIC) WHO PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED TO THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

_____         _____
                              PRINTED NAME OF NOTARY PUBLIC


HP407 591







## *Loss Mitigation Title Services*
### *3 First American Way, Santa Ana, CA 92707 or*
### *P.O. Box 27670, Santa Ana, CA 92799*

### *PROPERTY INFORMATION REPORT*

**WELLS FARGO HOME MORTGAGE**
**1100 CORPORATE CENTER DRIVE**
**MAC D0204-042**
**RALEIGH, NC 27607**
**ATTN: RALBSGTITLESUPPORT**

DATE ISSUED:  10/24/2014

ORDER NO.:
REFERENCE: 

NAME:
PROPERTY ADDRESS:
COUNTY:
AS OF THE DATE HEREOF:

**JULIE B O'STEEN**
**425 BELAIR AVENUE, MERRITT ISLAND, FL 32953**
**BREVARD**
**OCTOBER 10, 2014**

**A.** THE LAST RECORDED DOCUMENT PURPORTING TO TRANSFER TITLE TO THE LAND DESCRIBED HEREIN SHOWS THE FOLLOWING PURPORTED OWNER:

**JULIE BARBARA O'STEEN**

| | |
|---|---|
| Means of conveyance: | **WARRANTY DEED** |
| Grantor: | **HENRY J. FEHSE AND MARION C. FEHSE, HUSBAND AND WIFE** |
| Grantee: | **JULIE BARBARA O'STEEN** |
| Date recorded: | **DECEMBER 20, 1999** |
| Book: | **4103** |
| Page: | **0726** |

**B.** ACCORDING TO THE LATEST EQUALIZED ASSESSMENT ROLL THE FOLLOWING AD VALOREM TAX INFORMATION IS SHOWN:

ASSESSED VALUATION:

LAND: **$.00**     IMPROVEMENTS: **$48,550.00** EXEMPTIONS: **$25,000.00**

1.  For informational purposes only: General and special taxes for the current tax year 2014.

BREVARD COUNTY TAX COLLECTOR
GOVT. COMPLEX
400 SOUTH ST. 6TH FLOOR
TITUSVILLE, FL 32780
321-264-6930

PAGE 1

Annual Installment:   $766.68           NOT PAID
DUE BY:  03/31/2015
PENALTY DATE:  04/01/2015
PAYOFF AMOUNT:  $N/A
AMOUNT IS GOOD THROUGH: N/A

DISCOUNT DATES: The discount amount to pay by 11/30/2014 is $736.01.

| | |
|---|---|
| NO | Homeowners Exemption |
| YES | Homestead Exemption |
| NO | Owner Occupy |
| NO | Primary Res Exemption |
| NO | Principal Res Exemption |
| NO | Residential Exemption |
| NO | Agricultural Exemption |
| NO | Basic Star |
| NO | Disabled Exemption |
| NO | Disabled Vet Exemption |
| NO | First Dollar Credit |
| NO | Lottery Credit |
| NO | Mortgage Exemption |
| NO | Over 65 Exemption |
| NO | Roll Back Credit |
| NO | School Credit |
| NO | Veteran Exemption |

Is there an unattached mobile home identified?    N

A.P.No:    24-36-25-51-00000.0-0510.00
TAX ID:    2418898

**C. OFFICIAL RECORDS OF THE COUNTY WHERE THE LAND IS LOCATED SHOWS THE FOLLOWING UNRELEASED DOCUMENTS AFFECTING THE LAND:**

2.  A mortgage to secure an original principal indebtedness of **$82,400.00**, and any other amounts or obligations secured thereby, recorded **APRIL 11, 2002**, as **BOOK 4569 PAGE 2929** of Official Records.
Dated:    **APRIL 05, 2002**
Mortgagor:    **JULIE B. O'STEEN, A MARRIED WOMAN, JOINED BY HER SPOUSE, CHRISTOPHER B. O'STEEN**
Mortgagee:    **WELLS FARGO HOME MORTGAGE, INC.**

3.  A mortgage to secure an original principal indebtedness of **$100,000.00**, and any other amounts or obligations secured thereby, recorded **FEBRUARY 03, 2006**, as **BOOK 5600 PAGE 1524** of Official Records.

Dated:                    **JANUARY 09, 2006**
Mortgagor:           **JULIE BARBARA O'STEEN AKA JULIE O'STEEN AND CHRISTOPHER B O'STEEN, WIFE AND HUSBAND**
Mortgagee:          **SUNTRUST BANK**

4.  A mortgage to secure an original principal indebtedness of **$42,000.00**, and any other amounts or obligations secured thereby, recorded **MAY 01, 2014**, as **BOOK 7116 PAGE 2975** of Official Records.

Dated:                    **APRIL 20, 2014**
Mortgagor:           **JULIE O'STEEN**
Mortgagee:          **FLORIDA HOUSING FINANCE CORPORATION**

JUDGMENTS/LIENS/ADDITIONAL INFORMATION

5.  A judgment, a certified copy of which has filed/recorded **JANUARY 27, 2011** as **BOOK 6322 PAGE 2953** of Official Records.

Court:                    **IN THE COUNTY COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA**
Creditor:              **GRAYBAR ELECTRIC COMPANY, INC. A FOREIGN CORPORATION**
Debtor:                 **EGAN ELECTRIC, INC., A FLORIDA CORPORATION, NATHAN S. KILBURN, INDIVIDUALLY, AND CHRISTOPHER O'STEEN, INDIVIDUALLY**
Amount:               **$10,512.36** and any other amounts due thereunder.

6.  A judgment, a certified copy of which has filed/recorded **MARCH 03, 2011** as **BOOK 6343 PAGE 2458** of Official Records.

Court:                    **IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT IN AND FOR LAKE COUNTY, FLORIDA**
Creditor:              **CITY ELECTRIC SUPPLY COMPANY, A FLORIDA CORPORATION**
Debtor:                 **EGAN ELECTRIC, INC., A FLORIDA CORPORATION, AND CHRISTOPHER O'STEEN, JOINTLY AND SEVERALLY**
Amount:               **$34,965.25** and any other amounts due thereunder.

7.  A judgment, a certified copy of which has filed/recorded **SEPTEMBER 28, 2011** as **BOOK 6460 PAGE 150** of Official Records.

Court:                    **IN THE COUNTY COURT IN THE EIGHTEENTH JUDICIAL CIRCUIT IN AND FOR BREVARD COUNTY, FLORIDA**
Creditor:              **ARROW FINANCIAL SERVICES, LLC ASSIGNEE OF WASHINGTON MUTUAL BANK, A CORPORATION**
Debtor:                 **CHRISTOPHER OSTEEN**
Amount:               **$2,009.93** and any other amounts due thereunder.

8.  A judgment, a certified copy of which has filed/recorded **APRIL 27, 2012** as **BOOK 6588 PAGE 308** of Official Records.

Court:                    **IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT STATE OF FLORIDA IN AND FOR HILLSBOROUGH COUNTY, CIVIL DIVISION**
Creditor:              **CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., A DELAWARE CORPORATION, AUTHORIZED TO TRANSACT BUSINESS IN FLORIDA, D/B/A RAYBRO ELECTRIC SUPPLIES**
Debtor:                 **EGAN ELECTRIC, INC., A FLORIDA CORPORATION, AND CHRISTOPHER O'STEEN, INDIVIDUALLY**
Amount:               **$18,277.75** and any other amounts due thereunder.

NO TITLE ISSUES

**D. LEGAL DESCRIPTION:**
The land referred to in this policy is situated in the **STATE OF FLORIDA, COUNTY OF BREVARD, CITY OF MERRITT ISLAND**, and described as follows:

LOT 510, HAMPTON HOMES UNIT 8, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 16, PAGE 133 OF THE PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA.SUBJECT TO EASEMENTS, RESTRICTIONS, RESERVATIONS, AND LIMITATIONS OF RECORD, IF ANY.TOGETHER WITH ALL THE TENEMENTS, HEREDITAMENTS AND APPURTENANCES THERETO BELONGING OR IN ANY WISE APPERTAINING.



## LIMITATION OF LIABILITY

THIS REPORT CONTAINS INFORMATION OBTAINED FROM PUBLIC RECORDS IN THE COUNTY WHERE THE LAND IS LOCATED WHICH GIVES NOTICE OF MATTERS RELATING TO SAID LAND. EASEMENTS, RIGHTS OF WAY AND CC&R'S ARE NOT REPORTED. THIS REPORT IS NOT INTENDED TO BE, NOR SHOULD IT BE RELIED UPON AS A LEGAL OPINION OF TITLE OR ANY FORM OF TITLE INSURANCE. AS A PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, THE RECIPIENT AGREES THAT FIRST AMERICAN TITLE INSURANCE COMPANY'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE ARISING BY REASON OF ANY ERROR OR OMISSION CONTAINED HEREIN SHALL BE LIMITED BY THIS PARAGRAPH. THIS REPORT MAY MAKE REFERENCE TO INVOLUNTARY LIENS, JUDGMENTS OR OTHER DOCUMENTS OF RECORD WHEREIN THE DEBTOR'S NAME IS SIMILAR OR IDENTICAL TO THAT OF THE SUBJECT PROPERTY OWNER(S), BUT IS NOT, IN FACT, THE SAME PERSON(S). AS SUCH, ADDITIONAL INFORMATION MAY BE REQUIRED TO CONFIRM THE IDENTITY OF THE DEBTOR(S) AS THE PROPERTY OWNER(S). THIS REPORT SHALL CONSTITUTE AN OFFER TO ISSUE A MORTGAGE PRIORITY GUARANTEE WHEN A MORTGAGE PRIORITY GUARANTEE IS REQUESTED AND AVAILABLE. IF A MORTGAGE PRIORITY GUARANTEE IS ISSUED, FIRST AMERICAN TITLE INSURANCE COMPANY'S SOLE LIABILITY WILL BE UNDER AND CONTROLLED BY THE TERMS AND CONDITIONS OF THE MORTGAGE PRIORITY GUARANTEE.



**EXHIBIT A**

Branch :FRD   User :L0T6                                                Title Officer : LA   Order :
CFN 2011174513, OR BK 6460   Page 150, Recorded 09/28/2011 at 10:07 AM, Mitch
Needelman, Clerk of Courts, Brevard County

CFN 2010144727, OR BK 6212   Page 2400, Recorded 07/29/2010 at 01:24 PM, Scott
Ellis, Clerk of Courts, Brevard County

CLOSED                                           e-recording

IN THE COUNTY COURT IN THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA                              REDACTED

CASE NUMBER 05-2009-SC-049500 – DIV
                              XXXX- XX
ARROW FINANCIAL SERVICES, LLC,
ASSIGNEE OF
WASHINGTON MUTUAL BANK,
a corporation,
                 Plaintiff,

vs

CHRISTOPHER OSTEEN,
                 Defendant

_____/

DEFAULT FINAL JUDGMENT

The Defendant failed to appear at the Pre-Trial conference, and the Court finding that Plaintiff is entitled to a
Final Judgment, it is

ADJUDGED that the Plaintiff, ARROW FINANCIAL SERVICES, LLC, ASSIGNEE OF WASHINGTON
MUTUAL BANK, recover from the Defendant, CHRISTOPHER OSTEEN, the principal sum of $2,009.93, together
with prejudgment interest of $704.34, $220.00 for costs of this suit, that shall bear interest at the rate of six percent
(6%) per year, for which let execution issue

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant shall complete Florida Small Claims
Rules Form 7.343 (Fact Information Sheet) and return it to the Plaintiff's attorney within 45 days from the date of this
Final Judgment, unless the Final Judgment is satisfied or a motion for new trial or notice of appeal is filed
Jurisdiction of this case is retained to enter further orders that are proper to compel the Defendant to complete Form
7.343 and return it to the Plaintiff's attorney

DONE AND ORDERED at Titusville, Brevard County, Florida this _____ day of
_____, 2010

                                                    _____
                                                    County Court Judge

Copies to:

Kelly A. Karstaedt
Attorney for Plaintiff
Rubin & Debski, P A
P O Box 47718
Jacksonville, FL 32247

CHRISTOPHER OSTEEN
Defendant
425 BELAIR AVE
MERRITT ISLAND FL 32953
SSN

T0803299

STATE OF FLORIDA, COUNTY OF BREVARD
I HEREBY CERTIFY that the foregoing is a true
and correct copy of pages ___ through ___
of the instrument filed in this office. The original
instrument filed contains ___ pages.
☐ This copy has no redactions.
☒ This copy has been redacted pursuant to law.
MITCH NEEDELMAN, Clerk of Circuit and County Court
Dated _____ by _____ D.C.

Plaintiff's Address (F S  55 10)
ARROW FINANCIAL SERVICES, LLC
5996 W TOUHY AVENUE
NILES, IL 60714

Case # 05 2009-SC 049500-XXXX XX
Document Page # 12

015260766

BREVARD, FL Document:CP JG                                              Page:1 of 1

Printed on:10/25/2014 10:21:43

*EXHIBIT A*

Branch :TRD  User :L016  Title Officer : LA  Order :
CFN 2012081549, OR BK 6588  Page 308, Recorded 04/27/2012 at 01:13 PM, Mitch
Needelman, Clerk of Courts, Brevard County

INSTRUMENT#: 2012123570, BK: 21058 PG: 1650 PGS: 1650 – 1650 04/11/2012 at
08:09:23 AM,  DEPUTY CLERK:SLEWIS Pat Frank,Clerk of the Circuit Court
Hillsborough County

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT
STATE OF FLORIDA IN AND FOR
HILLSBOROUGH COUNTY, CIVIL DIVISION

CONSOLIDATED ELECTRICAL DISTRIBUTORS,
INC., a Delaware corporation, authorized
to transact business in Florida, d/b/a
RAYBRO ELECTRIC SUPPLIES,

          Plaintiff,

vs                                              Case No. 12-CA-000583

EGAN ELECTRIC, INC.,                            Division: "A"
a Florida corporation, and
CHRISTOPHER O'STEEN, individually,

          Defendants.
_____/

### FINAL JUDGMENT

THIS CAUSE came on before the Court after entry of a default against the Defendants, EGAN
ELECTRIC, INC., a Florida corporation, and, CHRISTOPHER O'STEEN, it is therefore

ORDERED AND ADJUDGED that Plaintiff recover from Defendants, EGAN ELECTRIC, INC., a
Florida corporation, and, CHRISTOPHER O'STEEN, the principal sum of $18,277.75, prejudgment interest of
$338 92, and court costs of $530 00 for a total of $19,146.67 that shall bear interest at the rate of six percent (4 75%)
per annum, for all of which let execution issue immediately and without further delay

THIS COURT shall retain jurisdiction on the issue of attorney's fees.

DONE AND ORDERED at Tampa, Florida, this 4 day of April, 2012.

                                        _____
                                        CIRCUIT COURT JUDGE

Copies furnished to:

R. JEFFREY STULL, ESQUIRE
602 South Boulevard          ← E
Tampa, Florida 33606

EGAN ELECTRIC, INC.,                    STATE OF FLORIDA      )
CHRISTOPHER O'STEEN                     COUNTY OF HILLSBOROUGH)
4115 N Courtenay Pkwy                   THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
Merritt Island, FL 33295                AND CORRECT COPY OF THE DOCUMENT ON FILE IN
                                        MY OFFICE WITNESS MY HAND AND OFFICIAL SEAL
Consolidated Electrical Distributors, Inc.   THIS ___ DAY OF April 20 12
Post Office Box 30443                              PAT FRANK
Tampa, FL 33630                               CLERK OF CIRCUIT COURT
                                        BY _____ D.C.

BREVARD, FL  Document:CP JG                                Page:1 of 1

Printed on:10/25/2014 10:21:43

Branch :HRD   User :L016
CFN 2011015894, OR BK 6322   Page 2953, Recorded 01/27/2011 at 04:01 PM, Mitch
Needelman, Clerk of Courts, Brevard County

*EXHIBIT A*

Title Officer : LA  Order :

E Shutts + Bowen LLP
300 S Orange Ave Ste 1000
Orlando Fl 32801

### IN THE COUNTY COURT OF THE NINTH JUDICIAL CIRCUIT
### IN AND FOR ORANGE COUNTY, FLORIDA

GRAYBAR ELECTRIC COMPANY,
INC. a foreign corporation,

        Plaintiff,

vs.

EGAN ELECTRIC, INC., a Florida
corporation, NATHAN S. KILBURN,
individually, and CHRISTOPHER B.
O'STEEN, individually,

        Defendants.

_____/

CASE NO.:    2010-CC-019340-O
DIVISION:    72 (Honorable Wilfredo Matinez)

LYDA GARDNER
CLERK CIRCUIT COURT
ORANGE CO FL

2011 JAN 20 AH 9: 1

FILED IN OFFICE
CIVIL DIVISION

### DEFAULT FINAL JUDGMENT

    **THIS MATTER** having come before the court on the Motion for Default Final Judgment filed

by Plaintiff, GRAYBAR ELECTRIC COMPANY, INC. a foreign corporation, against Defendants,

EGAN ELECTRIC, INC., a Florida corporation, NATHAN S. KILBURN, individually, and

CHRISTOPHER S. O'STEEN, individually, and the Court having considered the Motion and being fully

advised in the premises, it is

    **ORDERED AND ADJUDGED:**

    That Final Judgment is hereby rendered in favor of Plaintiff, GRAYBAR ELECTRIC

COMPANY, INC. a foreign corporation, whose address is c/o Mr. Mike Collins, Credit Manager, 2400 S.

Division Avenue, Orlando, Florida 32805, against Defendants, EGAN ELECTRIC, INC., a Florida

corporation, whose address is c/o its Registered Agent, Christopher B. O'Steen, 4115 N. Courtenay

Parkway, Merritt Island, Florida 32953, CHRISTOPHER S. O'STEEN, 4115 N. Courtenay Parkway,

Merritt Island, Florida 32953 and NATHAN S. KILBURN, whose address is 1160 Newfoundland Drive,

Merritt Island, Florida 32952, in the following amounts: the total principal sum of $10,512.36, interest in

the sum of $721.00, attorney's fees in the sum of $2,622.00, plus costs in the amount of $580.00, for a

total of $14,435.36, that shall bear interest at the legal rate of 6% per annum, for which sum let execution

and garnishment issue instanter.

Branch :IRD   User :L016                                                                    Title Officer : LA  Order :
OR BK   6322   PG   2954

**IT IS FURTHER ORDERED AND ADJUDGED** that the Defendants, EGAN ELECTRIC, INC., a Florida corporation, NATHAN S. KILBURN, individually, and CHRISTOPHER S. O'STEEN, individually, shall complete under oath Florida Rule of Civil Procedure Form 1.977, including all required attachments, and serve it on Plaintiff, GRAYBAR ELECTRIC COMPANY, INC.'s attorney, within forty-five (45) days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.

JURISDICTION OF THIS CASE is retained to enter further orders that are proper to compel Defendants to complete Form 1.977 in accordance herewith and to award the Plaintiff additional attorneys' fees and costs resulting from post-judgment proceedings in this cause.

DONE AND ORDERED in Chambers at Orlando, Orange County, Florida, this 20 day of January, 2011.

WILFREDO MARTINEZ
County Judge

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 20 day of January, 2011, U.S. Mail to Egan Electric, Inc. and Christopher B. O'Steen, 4115 N. Courtenay Parkway, Merritt Island, Florida 32953, Nathan S. Kilburn, 1160 Newfoundland Drive, Merritt Island, Florida 32952 and Todd F. Kobrin, Esq., Shutts & Bowen LLP, P.O. Box 4956, Orlando, Florida 32802-4956.

ORLDOCS 12057393 1

Judicial Assistant/Attorney

STATE OF FLORIDA, COUNTY OF ORANGE   I HEREBY CERTIFY
that the above and foregoing is a true copy of the original filed in this office
LYDIA GARDNER Clerk Circuit Court

JAN 20 2011                                              D.C.



2



Branch :TRD   User :L016                                    Title Officer : LA Order :▓▓▓
CFN 2011038890, OR BK 6343   Page 2458, Recorded 03/03/2011 at 03:37 PM, Mitch
Needelman, Clerk of Courts, Brevard County

# EXHIBIT A



IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND
FOR LAKE COUNTY, FLORIDA.

CASE NO. 2010-CA-2826

CITY ELECTRIC SUPPLY COMPANY, a Florida
corporation,

      Plaintiff,

vs.

EGAN ELECTRIC, INC., a Florida corporation,
and CHRISTOPHER B. O'STEEN, jointly and
severally,

      Defendants.

_____/

## FINAL JUDGMENT

    THIS CAUSE having come before the Court on Plaintiff's Complaint, the evidence offered in

support of such Complaint, together with the Stipulation entered into by Plaintiff and Defendants,

**EGAN ELECTRIC, INC.** and **CHRISTOPHER B. O'STEEN**, and supporting Affidavits, and the Court

further finding that the above named Defendants are indebted to the Plaintiff, **CITY ELECTRIC**

**SUPPLY COMPANY**, it is, upon consideration:

    ORDERED AND ADJUDGED as follows:

    1.    That due and legal service of process has been had upon the Defendant, EGAN

ELECTRIC, INC. and CHRISTOPHER B. O'STEEN in this cause.

    2.    That this Court has jurisdiction of the parties and its subject matter and that the

allegations contained in the Complaint have been proved by competent evidence and the equities in

this cause are with the Plaintiff.

    3.    The Court finds and adjudges that $643.75 is a reasonable attorney's fee to be

allowed for the additional services of Plaintiff's attorneys, incurred subsequent to the execution of

the Stipulation, which sum is also due and owing.

STONE & GERKEN, P.A.
ATTORNEYS AT LAW
4650 N. HIGHWAY 19A
MOUNT DORA, FLORIDA
32757

Branch :IRD   User :L016
OR BK  6343  PG  2459                                                    Title Officer : LA  Order :

# *EXHIBIT A*

Final Judgment
Page 2

4.    There is due to the Plaintiff, CITY ELECTRIC SUPPLY COMPANY, from

Defendants, EGAN ELECTRIC, INC. and CHRISTOPHER B. O'STEEN and  the following sums:

| | | |
|---|---|---|
| Stipulated balance | $95,365.85 | |
| (less payments) | $65,576.13 | $29,789.72 |
| Additional late charges from 06/25/10 to 12/25/10 | | $ 4,531.78 |
| Additional attorney fees from 07/16/10 to  01/19/11 | | $    643.75 |
| TOTAL | | $34,965.25 |

The foregoing itemized sums are now due and owing from Defendants, EGAN ELECTRIC,

INC. and CHRISTOPHER B. O'STEEN, to the Plaintiff, CITY ELECTRIC SUPPLY COMPANY, and,

in addition, such further sums as may be paid by the Plaintiff for court costs, together with interest at

the rate of 6% from the date of this judgment until paid and any further sums in connection with this

suit, for which let execution issue.

5.    It is further ordered and adjudged that the judgment debtor(s) shall complete under

oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required

attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the

judgment creditor is not represented by an attorney, **within 45 days from the date of this final**

**judgment,** unless the final judgment is satisfied or post-judgment discovery is stayed.

6.    Jurisdiction of this case is retained to enter further orders that are proper to compel

the judgment debtor(s) to complete form 1.977, including all required attachments, and serve it on

the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented

by an attorney.

7.    That this Court retains jurisdiction of this cause for the purpose of making all further

orders and judgments that may be necessary and proper.

8.    The address for Plaintiff, CITY ELECTRIC SUPPLY COMPANY, is P. O. Box

609521, Orlando, FL  32860-9521 and is physically located at Lockhart Plaza, 6827 N. Orange

Blossom Trail, Orlando, FL  32810.

DONE AND ORDERED in Tavares, Lake County, Florida, on this 16 day of February,

2011.
                                                      _____
                                                      Circuit Court Judge

STONE & GERKEN, P.A.
ATTORNEYS AT LAW
4250 N. HIGHWAY 19A
MOUNT. DORA, FLORIDA
32757



STATE OF FLORIDA, COUNTY OF LAKE
HEREBY CERTIFY that the above and foregoing
is a true copy of the document filed in this office.
NEIL KELLY, Clerk Circuit Court
By _____ Deputy Clerk
Dated 3/11/2011

BREVARD, FL  Document:CP JG

Printed on:10/25/2014 10:21:43

Branch :IRD   User :L016
OR BK   6343   PG   2460
Title Officer : LA  Order :

Final Judgment
Page 3

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by First Class U. S. mail to **STONE & GERKEN, P.A.,** 4850 North Highway 19-A Mount Dora, Florida 32727, **EGAN ELECTRIC, INC.,** 4115 N. Courtenay Pkwy., Merritt Island, FL 32953 and **CHRISTOPHER B. O'STEEN,** 4115 N. Courtenay Pkwy., Merritt Island, FL 32953, on this _16th_ day of February, 2011.

Judicial Assistant/Deputy Clerk

STONE & GERKEN, P.A.
ATTORNEYS AT LAW
4850 N. HIGHWAY 19A
MOUNT DORA, FLORIDA
32757

**BREVARD, FL Document:CP JG**

Printed on:10/25/2014 10:21:43

Page:3 of 3

# Exhibit F





Wells Fargo Home Mortgage
MAC D0203-02A
1100 Corporate Center Drive
Raleigh, NC 27607

March 23, 2015

Julie B O'Steen
425   Belair Ave
Merritt Island FL 32953 0000

Subject: Unresolved Title Issue - Modification
Loan Number: ▓▓▓▓▓

Dear Julie B O'Steen :

We are writing to follow-up on our previous request to resolve the title
issue(s) on the above referenced property. In order for Wells Fargo Home
Mortgage to proceed with your final loan modification we need for you to
provide documented proof that the title issue(s) has been resolved.

Please provide requested documentation within ten (10) business days of
the date of this letter or we will be required to deny your request for a
modification of your loan. Please fax your documents to 1-866-590-8910.
If you have any questions please feel free to contact me at the number
listed below.

Thank you for your cooperation.

Sincerely,

CHRISTOPHER TRULSON
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-877-458-8418 ext. 38862
Ext. 38862

Contact us
If you'd like to request information, notify us of an error, or share
any concerns you may have about the servicing of your loan, please
contact us at P.O. Box 10335, Des Moines, IA 50306.

HP403/NQZ



Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

03/23/2015   12:41PM  (GMT-05:00)

Exhibit G

JULIE B O'STEEN
425 BELAIR AVE

MERRITT ISLAND, FL  32953

RCP



|  | **Account Information** |
|---|---|
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | Wells Fargo Home Mortgage |
|  | P.O. Box 10335 |
|  | Des Moines, IA 50306 |
| Hours of Operation: | Mon – Thurs, 7 a.m. – 9 p.m., |
|  | Fri, 7 a.m. – 8 p.m., |
|  | Sat, 8 a.m. – 4 p.m. CT |
| Loan Number: | ▓▓▓▓ |
| Property Address: | 425 ___ BELAIR AVE |
|  | MERRITT ISLAND, FL |
|  | 32953 |

Date: May 01, 2015

Subject: Your request for assistance

Note: We service your mortgage on behalf of your investor, FREDDIE MAC.

Dear JULIE B O'STEEN  :

We're responding to your request for assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Here's what we found**
We carefully reviewed the information you provided us, which included a process that compared your information to the qualifications for assistance associated with your loan.  Here is the result of that review.


At this time, you do not meet the requirements of this program because:
  There are title issues with your property which prevents us from completing your request for assistance.


Once we determined that you did not meet the requirements for a particular program, we did not continue to evaluate that program based on other criteria related to your loan type or information you may have supplied. Instead we moved to evaluate you for the next available program based on your information and the qualifications associated with your loan.

**You have the right to dispute this decision**
Carefully read over this letter, which states  Wells Fargo Home Mortgage 's decision. If you believe the decision is incorrect and want to dispute the decision, you may submit your request in writing.

We have enclosed a Dispute Request Form for your convenience or you can write a letter of your own that explains the reason you disagree with the decision.

You can initiate a dispute by:
Faxing your dispute request to 1-866-590-8910.

Mailing your dispute request to:
1000 Blue Gentian Road,
Suite 300 MAC X9999-01N,
Eagan, MN 55121

Dispute request guidelines:
• We must receive your dispute request, with any additional information (as applicable) within 30 calendar days from the date of this letter.
• Be sure to include your loan number on your dispute request and any additional information.

Please note
As your home preservation specialist, I remain available to assist you with any questions you may have about this letter, but you must initiate an dispute request in one of the three ways listed above.

**Talk to me about your other options**
There may be other options available to help you avoid a foreclosure sale, provided you meet the requirements.

If the amount you owe on your mortgage is higher than what you think you can sell your house for, you may want to consider what is known as a "short sale." This option could allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a short sale requires a purchase contract. Once we receive a purchase contract Wells Fargo Home Mortgage will review the terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**We're here for you**
If you have any questions about the information in this letter please call me at the phone number listed below.

Sincerely,

CHRISTOPHER TRULSON
Home Preservation Specialist
Wells Fargo Home Mortgage
Phone: 1-877-458-8418 Ext: 38862
Fax: 1-866-590-8910

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

---

**Get free counseling to help manage expenses and avoid foreclosure**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you,

RcP

providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call the HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2015 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801
HP601 ML

# Dispute Request Form

Carefully read over the letter that came with this form, which states Wells Fargo 's decision. If you believe the decision is incorrect and want to dispute the decision, we recommend you use this form to submit.

**Important:**

- We must receive your written request to dispute within 30 calendar days from the date of this letter, or we will not move forward with a review of the decision. While not required, please provide any additional information (as applicable) that will help us look into your request. For example, if you have documentation that you sent a trial payment to us, please provide that documentation. Or, if the title on your home is free and clear, please supply that information.

Please explain the reason you disagree with the decision.

_____

_____

_____

_____

_____

_____

Be sure to include your loan number on any supporting documents.

JULIE B O'STEEN

Loan Number: ████████

Primary contact phone number: _____

Other contact phone numbers: _____

_____

Best day and time to call _____

**Mail your dispute request to:**
1000 Blue Gentian Road,
Suite 300 MAC X9999-01N,
Eagan, MN 55121

**Or fax your dispute request to:**
1-866-590-8910

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2015 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801

