**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
Case No.: 6:17-CV-00849-GAP-KRS

JULIE O'STEEN and
CHRISTOPHER O'STEEN,

                Plaintiff (s),

vs.

WELLS FARGO BANK, N.A., WELLS
FARGO HOME MORTGAGE, INC., and
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC

                Defendant (s).

_____/

**DEFENDANTS WELLS FARGO BANK, N.A.'S AND WELLS FARGO HOME**
**MORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants WELLS FARGO BANK, N.A. ("Wells Fargo") and Wells Fargo Home

Mortgage, Inc. ("WFHM"), by and through their undersigned counsel and pursuant to Federal

Rule of Civil Procedure 56, hereby move for summary judgment in their favor as to Counts I, III

and IV of the Second Amended Complaint (DE 43) filed by Plaintiffs, JULIE O'STEEN and

CHRISTOPHER O'STEEN ("O'Steens" or "Plaintiffs"), on the grounds that the pleadings and

summary judgment evidence show that there is no genuine issue as to any material fact and that

Wells Fargo and WFHM are entitled to summary judgment as a matter of law.

## I.       INTRODUCTION AND PROCEDURAL HISTORY

On October 24, 2016, Plaintiffs commenced this action against Wells Fargo and WFHM,

among others, seeking damages for a purported violation of the Real Estate Settlement

Procedures Act ("RESPA") as well as declaratory relief (ECF No. 1). On January 17, 2017,

Plaintiffs filed an Amended Complaint containing six counts, only two of which were directed to

Wells Fargo and WFHM. *See* ECF No. 24. After the Court granted Wells Fargo's and WFHM's motion to dismiss as to one of those two counts, Plaintiffs filed a Second Amended Complaint that again contained six counts, only three of which were directed to Wells Fargo and WFHM – Counts I, III and IV.  *See* ECF No. 43.  Count One alleges that Wells Fargo and WFHM breached a contract to modify Plaintiffs' loan, while Counts III and IV allege that Wells Fargo and WFHM violated RESPA and its implementing rules (known as Regulation X) by denying Plaintiffs for a permanent loan modification, failing to provide Plaintiffs with notice of the reason for such denial, and seeking a foreclosure judgment or sale after receipt of a completed loss mitigation application more than 37 days before the sale.  *See* ECF No. 43, ¶¶ 32-38, 45-54.

Contrary to Plaintiffs' allegations, however, WFHM did not exist as an entity or service Plaintiffs' Loan during the relevant time period and thus, cannot be held liable under any of Plaintiffs' legal theories.  Moreover, neither Wells Fargo nor WFHM were under any contractual or statutory obligation to modify Plaintiffs' loan and instead fully complied with the cited sections of RESPA and Regulation X.  Simply put, this action arises from Plaintiffs' unhappiness about their own unwillingness and/or inability to clear certain title issues that prevented a permanent modification of their loan and the resulting foreclosure of their home.  Plaintiffs' inaction as to the title issues does not, and cannot, establish a claim against Wells Fargo or WFHM for breach of contract or violation of RESPA.  Consequently, Plaintiffs' claims fail as a matter of law and both Wells Fargo and WFHM are entitled to entry of summary judgment in their favor.

## II.   STATEMENT OF MATERIAL FACTS

In support of this Motion, Wells Fargo and WFHM have filed the following: (1) Declaration of Richard L. Penno, who is employed by Wells Fargo as a Vice President Loan

Documentation, (ECF No. 84) (hereinafter referred to as "Declaration"), (2) Request for Judicial Notice (ECF No. 85), and (3) Supplemental Request for Judicial Notice (ECF No. 86).  Wells Fargo also relies upon and cites to its Verified Responses to Court Interrogatories (ECF No. 37-1), Plaintiffs' Answers to Court Interrogatories (ECF No. 38-1), and Plaintiff's Second Amended Complaint (ECF No. 43).  Wells Fargo's statement of material facts as to which there is no genuine issue for trial is as follows:

1.     On or about April 5, 2002, Plaintiff Julie O'Steen executed and delivered to Wells Fargo Home Mortgage, Inc. a Fixed Rate Note in the principal amount of $82,400 (the "Note"). *See* Declaration, ¶ 2, Ex. A.

2.     As security for the indebtedness evidenced by the Note, Plaintiff Julie O'Steen and her spouse, Plaintiff Christopher B. O'Steen, executed a Mortgage in favor of Wells Fargo Home Mortgage, Inc. (the "Mortgage") (the Note and Mortgage are collectively referred to herein as the "Loan") encumbering the property located at 425 Belair Ave., Merritt Island, FL 32953 (the "Property"). *See* Declaration, ¶ 3, Ex. B.

3.     Effective May 8, 2004, Wells Fargo Home Mortgage, Inc. was acquired by and merged into Wells Fargo.  *See* Declaration, ¶ 4.

4.     During the time period relevant to this action, Wells Fargo acted as servicer for the Loan.  *See* Declaration, ¶ 4.

5.     On or about December 3, 2012, Wells Fargo began proceedings to foreclose upon the Mortgage in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2012-CA-064657-XXXX-XX (the "Foreclosure Action").  *See* ECF No. 85, Ex. A, B.

6.     In December 2012, Wells Fargo received a loss mitigation application from

Plaintiffs that requested unemployment forbearance in connection with their Loan.  *See* ECF No. 37-1, ¶ 9.

7.      By January 2013, all financial documents needed for review of the unemployment forbearance had been received by Wells Fargo and Plaintiffs were offered a six month forbearance, which ended in June 2013.  *See* ECF No. 37-1, ¶ 9.

8.      Wells Fargo did not file any motions or other documents in the Foreclosure Action during the pendency of the unemployment forbearance.  See ECF No. 85, Ex. A.

9.      At the end of 2013, Plaintiffs fell into financial distress.  *See* ECF No. 43, ¶ 17.

10.     On January 9, 2014, the court in the Foreclosure Action entered a Final Summary Judgment of Mortgage Foreclosure in favor of Wells Fargo, which set a sale of the Property for February 27, 2014.  *See* ECF No. 85, Ex. C.

11.     Between January 2014 and September 2014, the sale of the Property was re-scheduled three times with the court in the Foreclosure Action ultimately entering a September 30, 2014 order scheduling the foreclosure sale for January 7, 2015.  *See* ECF No. 85, Ex. A, D-F.

12.     In October 2014, Wells Fargo received a completed loss mitigation application from Plaintiffs.  *See* ECF No. 37-1, ¶ 9.

13.     After receiving Plaintiffs' completed loss mitigation application in October 2014, Wells Fargo did not file in the Foreclosure Action any motion or other document seeking to reschedule or move forward with the foreclosure sale.  *See* ECF No. 85, Ex. A.

14.     By letter dated October 23, 2014, Wells Fargo notified Plaintiffs that they had been approved for a trial payment plan under which they were required to make three monthly payments (the "Trial Period Plan").  *See* ECF No. 37-1, ¶ 9; ECF No. 43, ¶ 21; Declaration, ¶¶ 5-6, Ex. C.

15.     Among other things, Wells Fargo's October 23, 2014 letter to Plaintiffs expressly stated that "your trial period may extend beyond the dates provided" and instructed Plaintiffs to continue making trial period payments "until your home preservation specialist advises that you may move forward with a final modification or that you are no longer eligible for a modification."  Declaration, Ex. C.

16.     Wells Fargo's October 23, 2014 letter to Plaintiffs also expressly stated that "[s]ome reasons for the extension [of the trial period] could be tied to other liens you have on your property that may be required to be cleared prior to final approval of your modification." Declaration, Ex. C.  Wells Fargo's letter further advised Plaintiffs that their "mortgage may only be modified after we determine all your trial period payments were made on time and you submitted all the required documents, including any title clearance requirements."  *Id.*

17.     Wells Fargo's October 23, 2014 letter advised Plaintiffs that Wells Fargo would "not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the Trial Period Plan" but that "[a]ny pending foreclosure action or proceeding may be immediately resumed if you fail to comply with the terms of the Trial Period Plan or do not qualify for a modification."  Declaration, Ex. C.

18.     By letter dated October 31, 2014, Wells Fargo notified Plaintiffs in writing that it would be unable to complete the final modification of the Loan until certain title issues on the Property were resolved.  Declaration, ¶¶ 5, 7, Ex. D.

19.     Wells Fargo's October 31, 2014 letter specifically identified the forms to be completed and documents to be submitted by Plaintiffs to clear the title issues on the Property. Declaration, Ex. D.

20.     Plaintiffs made the December 1, 2014, January 1, 2015 and February 1, 2015 trial

plan payments that were due to be made under the Trial Period Plan.  *See* ECF No. 37-1, ¶ 10; ECF No. 38-1, ¶ 9.

21.    Beginning in December 2014, Wells Fargo made multiple telephone calls to Plaintiffs' attorneys requesting documents needed to demonstrate clear title to the Property, specifically including subordination documents from other lienholders.  *See* ECF No. 37-1, ¶ 10.

22.    In December 2014, Plaintiffs filed in the Foreclosure Action a motion to cancel the foreclosure sale scheduled for January 5, 2015, which motion was granted by the court.  *See* ECF No. 43, ¶ 25; ECF No. 85, Ex. A.[1]

23.    By letter dated February 3, 2015, Wells Fargo notified Plaintiffs in writing that it had not received the documents required to move forward with a loan modification.  *See* ECF No. 37-1, ¶ 10; Declaration, ¶¶ 5, 8, Ex.E_.

24.    Wells Fargo's February 3, 2015 letter specifically identified those documents that Plaintiffs must send to Wells Fargo to move forward with a loan modification and expressly advised that "[f]ailure to return the requested documents may result in your modification being denied." Declaration, Ex. E.

25.    By letter dated March 23, 2015, Wells Fargo notified Plaintiffs in writing that it could not proceed with a final modification of the Loan unless and until Plaintiffs provided documented proof that the title issues to the Property had been resolved.  *See* ECF No. 37-1, ¶ 10; Declaration, ¶¶ 5, 9, Ex. F.

26.    Wells Fargo's March 23, 2015 letter expressly requested that Plaintiffs provide the requested documentation with 10 business days or Wells Fargo "will be required to deny

---

[1] Pursuant to Fed. R. Evid. 201(c), Wells Fargo requests that the Court take judicial notice of the motion and order canceling the foreclosure sale available online from the Brevard County Clerk of Court, as a source whose accuracy cannot reasonably be questioned.

your request for a modification of your loan." Declaration, Ex. F.

27.     By letter dated May 1, 2015, Wells Fargo notified Plaintiff that their request for a modification of their Loan had been denied because documents needed to address title issues with respect to the Property had not been received.  *See* ECF No. 37-1, ¶ 10; Declaration, ¶¶ 5, 10, Ex. G.

28.     Wells Fargo's May 1, 2015 letter expressly stated that Plaintiffs did not meet the requirements for the modification program because "[t]here are title issues with your property which prevents us from completing your request for assistance."  Declaration, Ex. G.

### III.     MEMORANDUM OF LAW

#### A.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant meets its initial burden of pointing to the absence of a genuine issue, the burden then shifts to the non-moving party to come forward with significant, probative evidence establishing a triable issue of fact. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  Conclusory statements have no probative value, and a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat summary judgment.  *Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

"All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, …but an inference based on speculation and conjecture is not reasonable." *Blackstone v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) (citations omitted). *See also Vega v. Invesco Group, Ltd.*, 432 Fed.Appx. 867, 869-870 (11th Cir. June 24,

2011) ("the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative'"); *Founders Ins. Co. v. Tome*, 878 F.Supp.2d 1266, 1273 (M.D. Fla. 2012) ("with respect to the chain of inferences Defendant proffers, '[s]upposition is not the same as reasonable inference, and speculation cannot substitute for evidence.'"). Inferences that are only a guess or a possibility constitute speculation and are not reasonable. *Feinman v. Target Corp.*, 2012 WL 6061745, *6, n. 4 (S.D. Fla. Dec. 6, 2012). Indeed, "speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Id*. And an issue of fact is not created by a witness who testifies as to a "mere possibility" of a fact, but has no knowledge of the fact. *Founders*, 878 F. Supp.2d at 1273.

**B.      WFHM IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO COUNTS I, III AND IV OF THE SECOND AMENDED COMPLAINT BECAUSE PLAINTIFF CANNOT ATTRIBUTE ANY ACTIONS TO WFHM DURING THE RELEVANT TIME PERIOD**

Plaintiffs' Second Amended Complaint initially defines Wells Fargo and WFHM as separately parties, but then improperly lumps them both together in alleging that "Wells Fargo" committed various actions in breach of an unspecified contract and other statutory obligations under RESPA. *See* ECF No. 43, ¶¶ 8-9, 23, 25-26, 32-38, 45-54. As purported justification for their pleading mechanism, Plaintiffs allege that "[i]t was not always clear whether Wells Fargo Home or the Bank was servicing [the Loan] at any given time, but it was clear that the two worked in concert to service the loan prior to Rushmore's involvement." ECF No. 43, ¶ 16. However, Plaintiffs' purported justification fails as a matter of law.

As set forth in the Second Amended Complaint, each of Plaintiffs' claims against WFHM and Wells Fargo is based upon actions occurring after the "closing months of 2013." *See* ECF No. 43, 17-26, 32-38, 45-54. However, it is undisputed that effective May 8, 2004, WFHM was

acquired by and merged into Wells Fargo.  Declaration, ¶ 4.  As a result, WFHM no longer existed as a separate entity after May 8, 2004 and thus, no actions taken in 2013 and thereafter may properly or legally be attributed to WFHM.  Instead, Wells Fargo acted as servicer for Plaintiffs' Loan during the time relevant to this action.  Declaration, ¶ 4.  For this reason alone, WFHM is entitled to summary judgment in its favor as to Counts I, III and IV of the Second Amended Complaint.

To the extent the Court determines that any of the actions alleged by Plaintiff may be attributed to WFHM rather than Wells Fargo, WFHM incorporates by reference as though fully set forth on its behalf each of the arguments asserted below by Wells Fargo and seeks entry of summary judgment in its favor on those grounds.

**C.**    **WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO COUNT I OF THE SECOND AMENDED COMPLAINT BECAUSE PLAINTIFF CANNOT ESTABLISH THE ELEMENTS REQUIRED FOR A BREACH OF CONTRACT CLAIM**

Under Florida law, "[t]he elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).  In Count I of their Second Amended Complaint, Plaintiffs attempt to state a breach of contract claim against Wells Fargo based upon generic allegations that "Wells Fargo and the O'Steens entered into a valid contract to modify the O'Steens' mortgage loan" that Wells Fargo breached despite Plaintiffs' compliance with the same.  ECF No. 43, ¶¶ 33-35.  Plaintiffs' summary allegations, however, lack any legal or factual support.

*i.    Plaintiff Cannot Establish a Valid Contract to Permanently Modify Their Loan*

As an initial matter, Plaintiffs wholly fail to identify the contract upon which they base their purported breach of contract claim.  Instead, Plaintiffs incorporate by reference all of the facts alleged in the Second Amended Complaint and rely upon vague references to a "contract."

ECF No. 43, ¶¶ 32-38.   Notwithstanding this apparent pleading deficiency, it seems Plaintiffs rely upon the Trial Period Plan as the purported contract that would fulfill the first element of their claim.   Plaintiffs' reliance, however, is misplaced.

To establish the presence of a valid contract, Plaintiffs must allege and prove "the existence of: (1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement." *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).   The Trial Period Plan does not meet these criteria because: (1) Plaintiffs do not and cannot identify any consideration provided to Wells Fargo in connection with their entering into the Trial Period Plan; and (2) the Trial Period Plan is an unenforceable agreement to agree because it did not guarantee that Plaintiffs would receive a permanent modification and thus, did not identify the essential terms of any permanent modification.

First, Plaintiffs' alleged performance of their obligations under the Trial Period Plan consists solely of remitting the reduced monthly payments required by that plan.   *See* ECF No. 43, ¶¶ 23, 34.   However, the terms of the Loan already required Plaintiffs to make monthly payments that were greater than those required by the Trial Period Plan.   Courts have routinely found that payments of only a portion of what a borrower is already legally obligated to pay does not constitute consideration and have specifically applied this maxim to trial plan payments such as those made by Plaintiffs in this case.   *See e.g. Senter,* 810 F. Supp. 2d at 1347-49 (holding that borrowers failed to adequately plead consideration for purposes of establishing that a trial period agreement was a valid contract); *Int'l Shoe Co. v. Carmichael*, 114 So. 2d 436, 437 (Fla. 5th DCA 1959); *Ishler v. Chase Home Finance, LLC,* No. 1: CV10-2117, 2011 WL 744538 at *6 (M.D. Pa. Feb. 23, 2011).   Accordingly, Plaintiffs' payment of reduced monthly payments under

the Trial Period Plan constitute nothing more than the performance of their pre-existing duty under the Loan, which is insufficient under Florida law to establish the consideration necessary for a valid contract. *Senter*, 810 F. Supp. 2d at 1346 (*citing Brinson v. Herlong*, 164 So. 137 (1935)).

Second, the Trial Period Plan constitutes nothing more than an unenforceable agreement to agree as shown by its express language. The plain language of the Trial Period Plan does not explicitly guarantee that Plaintiffs will receive a permanent loan modification. Instead, it sets forth the rights and obligations of the parties during a trial period after which Wells Fargo may provide Plaintiffs with a permanent loan modification if certain criteria are met. For example, the Trial Period Plan expressly states that the "good news" is that Plaintiffs "**may** be eligible for a modification offered by Freddie Mac (the owner of your loan)" and that their "mortgage **may** only be modified after we determine all your trial period payments were made on time and you submitted all the required documents, including any title clearance requirements." *See* Declaration, Ex. C at p. 1 (emphasis added). It further states that a "modification **may** be denied even if [Plaintiffs] pay the trial period payments" but "fail to provide a subordination agreement from another lender or fail to pay off a judgment lien as required." *Id.* (emphasis added). Moreover, the Trial Period Plan does not establish the terms of any potential loan modification that may be offered if Wells Fargo determines that Plaintiffs met the required criteria. Rather, the Trial Period Plan expressly states that Plaintiffs will know whether their Loan can be modified and how the modified loan balance will be determined **only after** the trial period is complete **and** Wells Fargo sends Plaintiffs a "Loan Modification Agreement detailing the terms of the modified loan." *See* Declaration, Ex. C at p. 6. Because the Trial Period Plan does not itself establish any of the essential terms of a permanent loan modification, it is indefinite and

11

uncertain as to such terms and represents, at best, an unenforceable agreement to agree that does not rise to the level of a valid contract. *See Senter*, 810 F. Supp. 2d at 1351-52 (holding that borrowers did not state a plausible claim for breach of contract where a trial period agreement did not contain sufficient specifications of the essential terms of a permanent loan modification).

Because Plaintiffs do not and cannot prove the third and fourth elements required to establish a valid contract upon which a breach of contract claim could be based, Wells Fargo is entitled as a matter of law to summary judgment in its favor as to Count I of the Second Amended Complaint.

       *ii.*    *Plaintiffs Cannot Establish A Breach of Contract by Wells Fargo*

Even if Plaintiffs could establish that the Trial Period Plan is a valid contract to permanently modify their loan, which it is not, they cannot establish that Wells Fargo breached its obligations under the Trial Period Plan.  In an effort to do so, Plaintiffs allege that Wells Fargo breached the Trial Period Plan by: (1) failing to accept trial payments tendered by Plaintiffs in January and February 2016, (2) refusing to convert the trial plan into a permanent modification of their Loan, and (3) seeking a sale date of the Property even though Plaintiffs made the trial period payments.  *See* ECF No. 43, ¶¶ 26, 35.  Plaintiffs' allegations, however, lack any factual support and are contradicted by the plain language of the Trial Period Plan.

First, the Trial Period Plan expressly states that "all terms of and provisions of [Plaintiffs'] current mortgage note and mortgage security instrument remain in full force and effect," but that Plaintiffs may make the monthly trial period payments only "until your home preservation specialist advises that you may move forward with a final modification or that you are no longer eligible for a modification."  *See* Declaration, Ex. C at pp. 1, 7.  It is undisputed that Plaintiffs never received any notification that they may move forward with a final

modification of their Loan – indeed, Plaintiffs presumably would not have filed the instant lawsuit had they received such notification.  It also cannot be disputed that Plaintiffs received notice from their Wells Fargo home preservation specialist in May 2015 stating that they were no longer eligible for a modification.  *See* Declaration, ¶¶ 5,10; ECF No. G.  As a result, Plaintiffs did not have the right to submit – and Wells Fargo had no obligation to accept – reduced trial period payments tendered after May 1, 2015.  To the contrary, the terms of the Trial Period Plan required Plaintiffs to resume making the full monthly payments due under the Loan upon receiving the May 1, 2015 notice.  *See* Declaration, Ex. C.  Thus, Wells Fargo's alleged rejection of trial plan payments submitted by Plaintiffs in January and February 2016 did not and cannot constitute a breach of the Trial Period Plan.

Second, the Trial Period Plan does not obligate Wells Fargo to provide Plaintiffs with a permanent modification of their Loan.  To the contrary, it states only that Plaintiffs' Loan **may** be modified **if and only if** Wells Fargo determines that Plaintiffs made all of their trial period payments on time **and** submitted all required documentation, including any title clearance requirements.  *See* Declaration, Ex. C at p. 1.  Wells Fargo advised Plaintiffs for several months that they needed to submit additional documents to clear title issues in order to move forward with a modification of their Loan.  *See* Declaration, ¶¶ 5-9, Ex. D-F; ECF No. 37-1, 10.  At the inception of the Trial Period Plan and thereafter, Wells Fargo further advised Plaintiffs that the failure to submit such documents would result in the denial of their request to permanently modify their Loan.  *See* Declaration, ¶¶ 5-9, Ex. D-F.  When Plaintiffs failed to heed this advice, Wells Fargo did exactly that which it was permitted to do under the Trial Period Plan – deny Plaintiffs' request for a permanent modification of their Loan.  *See* ECF No. 37-1, ¶ 10; Declaration, ¶¶ 5, 10, Ex. G.   Thus, Plaintiffs did not and cannot establish that Wells Fargo's

refusal to permanently modify their Loan constituted a breach of the Trial Period Plan.

Lastly, the Trial Period Plan expressly provides that Wells Fargo will not proceed with a foreclosure sale of the Property during the trial period **provided that** Plaintiffs are complying with the terms of the Trial Period Plan.  *See* Declaration, Ex. C at p.  7.   Despite this plain language, Plaintiffs nonetheless allege that Wells Fargo breached the Trial Period Plan by "seeking a sale date of the home even though [they] had made all payments as agreed."  ECF No. 43, ¶ 35.  Plaintiffs' allegation, however, ignores the fact that the Trial Period Plan imposed more than just a monetary payment obligation on Plaintiffs.  The Trial Period Plan explicitly required Plaintiffs to submit additional documentation required by Wells Fargo, including specifically any title clearance requirements.  *See* Declaration, Ex. C at p. 1.   Because Plaintiffs did not comply with this requirement, Wells Fargo's obligation not to proceed with a foreclosure sale of the Property was not triggered.  Even if such obligation was triggered, Wells Fargo did not seek to reschedule the sale of the Property after receiving Plaintiffs' complete loss mitigation application.  *See* ECF No. 85, Ex. A.  Thus, Plaintiffs did not and cannot establish that Wells Fargo breached the Trial Period Plan.

Because Plaintiffs do not and cannot establish that Wells Fargo breached any of its obligations under the Trial Period Plan, Wells Fargo is entitled as a matter of law to summary judgment in its favor as to Count I of the Second Amended Complaint.  *See e.g. Senter*, 810 F. Supp. 2d at 1360 (dismissing borrowers' claim for breach of contract based in part upon the borrowers' failure to allege a breach of any the servicer's obligations under a trial period plan).

**D.     WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO COUNTS III AND IV OF THE SECOND AMENDED COMPLAINT BECAUSE PLAINTIFF FAILS TO ESTABLISH ANY VIOLATION OF RESPA AND REGULATION X**

Regulation X, promulgated in accordance with RESPA, governs the manner in which

mortgage servicers must handle borrowers' loss mitigation applications.   *See* 12 C.F.R. § 1024.41 (2017); *Berene v. Nationstar Mortgage LLC*, No. 14-61153-Civ-Scola, 2016 WL 3787558 *1, 2 (S.D. Fla. Jul. 22, 2016).   Count III of the Second Amended Complaint alleges that Wells Fargo violated Section (d) of Regulation X by "*de facto* denying" Plaintiffs for a permanent modification without providing notice of the reason for such denial.   ECF No. 43, ¶ 47.   Count IV of the Second Amended Complaint alleges that Wells Fargo violated Section (g) of Regulation X by seeking a foreclosure sale of the Property after receiving a completed loss mitigation application more than 37 days before the scheduled sale.   ECF No. 43, ¶ 52. Plaintiffs' allegations, however, lack any legal or factual support.

> i.     *Plaintiffs Cannot Establish A Violation of Section (d) of Regulation X*

Section (d) of Regulation X provides:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. 1024.41(d) (2017).   Thus, to prevail on their claim in Count III, Plaintiffs must establish that Wells Fargo both denied Plaintiffs' complete loss mitigation application for a permanent loan modification option available to Plaintiffs and failed to provide Plaintiffs with the specific reason for its determination.   Plaintiffs simply cannot do so.

As an initial matter, Wells Fargo's October 23, 2014 letter expressly notified Plaintiffs that they were approved, **not** denied, for the Trial Period Plan.   Declaration, Ex. C.   Despite this clear language, Plaintiffs nonetheless allege that Wells Fargo "*de facto*" denied them for a "permanent trial modification."   ECF No. 43, ¶ 47.   Considering that there cannot be a

15

"permanent" yet "trial" modification, Plaintiffs' allegation can only be construed as one in which they allege Wells Fargo "*de facto* denied" them a permanent loan modification.  However, Wells Fargo's May 1, 2015 letter did not expressly deny Plaintiffs any permanent modification option available to them.  Declaration, Ex. G.  To the contrary, Wells Fargo's May 1, 2015 letter expressly notified Plaintiffs that they did not "meet the requirements" for a permanent modification.  *Id*.  Thus, the language of the May 1, 2015 letter indicates that a permanent modification option was not available to Plaintiffs rather than indicating that Plaintiffs had been denied for an option that was available to them.  Because of this, Wells Fargo's obligations under Section (d) of Regulation X were not triggered and Plaintiffs' claim for a violation of that Section must fail as a matter of law.

Even if Wells Fargo's decision could be construed as a denial of a permanent modification option available to Plaintiffs, Wells Fargo fully complied with the requirements of Section (d) of Regulation X.  Wells Fargo's May 1, 2015 letter expressly and specifically notified Plaintiffs that they "do not meet the requirements of this program because: [t]here are title issues with your property which prevents us from completing your request for assistance." Declaration, ¶¶ 5, 10, Ex. G.  Thus, contrary to Plaintiffs' allegation otherwise, Wells Fargo fully and expressly complied with the requirement under Section (d) of Regulation X to provide "the specific reason or reasons" for its determination.  In an effort to circumvent the plain language of Wells Fargo's May 1, 2015 letter, Plaintiffs allege that Wells Fargo nonetheless violated Section (d) of Regulation X "because it did not give the actual reasons for such denial."  ECF No. 43, ¶ 47.  Not only does Plaintiffs' allegation lack any factual support, it is disingenuous.  Wells Fargo repeatedly notified Plaintiffs that it required additional documents in connection with title issues on the Property to move forward with a permanent loan modification and that Wells Fargo would

16

be forced to deny Plaintiffs' request for a permanent loan modification if it didn't receive those additional documents.   Declaration, ¶¶ 7-9, Ex. D-F.   As a result, Plaintiffs knew that their failure to provide documents clearing title could – and eventually did – form the basis for the denial of their request for a permanent loan modification.   Accordingly, Plaintiffs' hollow allegation that the title issues referenced in the May 1, 2015 letter couldn't be the "actual reason" for the denial of a permanent loan modification do not and cannot establish a violation of Section (d) of Regulation X.

Not only do Plaintiffs' allegations in this case lack support, they are expressly contradicted and negated by their statements and actions in the Foreclosure Action.   On or about October 24, 2016 – almost five months before the filing of the Second Amended Complaint, Plaintiffs filed in the Foreclosure Action a notice attaching and expressly describing Wells Fargo's May 1, 2015 letter as a "letter from Wells Fargo Home Mortgage denying loan modification due to title issues."   ECF No. 86, Ex. A.   Based on this filing, Plaintiffs clearly knew or at least believed before filing the Second Amended Complaint that: (1) they had been denied for a permanent loan modification, and (2) such denial was due to title issues.   As a result of their prior statements in the Foreclosure Action, Plaintiffs are barred from now claiming that they weren't provided the notice required by Section (d) of Regulation X.   *See e.g. Ward v. AMS Servicing, LLC,* 606 Fed. Appx. 506, 509-510 (11th Cir. 2015) (affirming the dismissal of a borrower's TILA claim that depended upon an assertion that was contrary to one previously made by the borrower under oath as part of a bankruptcy proceeding); *Ardese v. DCT, Inc.*, 280 Fed. Appx. 691, 694-695 (10th Cir. 2008) (affirming summary judgment in favor of employer because employee who failed to disclose claims against employer in her bankruptcy proceeding was judicially estopped form later pursuing such claims).

17

Because Plaintiffs cannot establish any violation of Section (d) of Regulation X by Wells Fargo and are estopped from asserting such a claim, they also cannot establish any actual damages resulting from the non-existent violation.   Accordingly, Wells Fargo is entitled to summary judgment as a matter of law in its favor as to Count III of the Second Amended Complaint.

  ii. *Plaintiffs Cannot Establish A Violation of Section (g) of Regulation X*

Section (g) of Regulation X provides:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale or conduct a foreclosure sale, unless:
>
> > (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrowers' appeal has been denied;
> > (2) The borrower rejects all loss mitigation options offered by the servicer; or
> > (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. §1024.41(g) (2017).   In Count IV of the Second Amended Complaint, Plaintiffs summarily allege that Wells Fargo violated this Section by "seeking a foreclosure judgment or foreclosure sale of the property after receipt of a completed loss mitigation application, more than 37 days before a foreclosure sale."   ECF No. 43, ¶ 52.   Once again, however, Plaintiffs' allegations lack any factual or legal support.

It is undisputed that the court in the Foreclosure Action entered a foreclosure judgment in Wells Fargo's favor on January 9, 2014 – nine months before Wells Fargo received a complete loss mitigation application from Plaintiffs.   ECF No. 85, Ex. C; ECF No. 43-1, ¶ 9.   It is also

undisputed that the foreclosure judgment ordered that the sale of the Property occur on February 27, 2014.  ECF No. 85, Ex. C.  Thus, Wells Fargo simply did **not** move for a foreclosure judgment or order of sale after receiving Plaintiffs' complete loss mitigation application because such judgment and order had already been entered in the Foreclosure Action.  *See e.g. Landau v. RoundPoint Mortgage Servicing Corp.*, Case No. 16-cv-62795-BLOOM/Valle, 2017 WL 960214 * 3-4 (S.D. Fla. Mar. 13, 2017), *appeal docketed*, No. 17-11151 (11th Cir. Mar. 15, 2017) (dismissing with prejudice a borrower's claim for violation of section (g) of Regulation X where the foreclosure judgment and concomitant order of sale were entered months before the borrower accepted a trial period plan).

Faced with this indisputable fact, Plaintiffs rely solely on an allegation that they filed a motion to cancel the previously scheduled foreclosure sale for which Wells Fargo did not reimburse them to establish a violation of Section (g) of Regulation X.[2]  See ECF No. 43, ¶¶ 23, 25, 50.  Plaintiffs' allegation, however, ignores the plain language of that Section, which only prohibits Wells Fargo from affirmatively "**mov[ing]** for a foreclosure judgment or order of sale." 12 C.F.R. § 1024.41 (2017) (emphasis added). Similarly, comments on Regulation X from the Consumer Financial Protection Bureau mention only that a servicer "may not **move** for a foreclosure judgment or order of sale, or conduct a foreclosure sale, until one of [the] three conditions [referenced in Section (g) of Regulation X] has been satisfied."  Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696 (Feb. 14, 2013) (emphasis added).  It cannot be disputed that Wells Fargo did not affirmatively move for a foreclosure judgment or order of sale or conduct a foreclosure sale after receiving

---

[2] Plaintiffs' allegations ignore the fact that the foreclosure judgment scheduled a sale of the Property for February 27, 2014.  Instead, Plaintiffs allege that a foreclosure sale was scheduled for December 2014, which is factually incorrect. ECF No. 43, ¶ 23. The September 30, 2014 order entered in the Foreclosure Action re-scheduled a sale previously set for April 30, 2014 to January 7, 2015.  ECF No. 85, Ex. F.

Plaintiffs' completed loss mitigation application in October 2014.  ECF No. 85, Ex. A.  Indeed, Wells Fargo did not move to reschedule the foreclosure sale at any time between receiving Plaintiffs' complete loss mitigation application and the transfer of the servicing of Plaintiffs' Loan to Rushmore Loan Management Services, LLC ("Rushmore") in March 2016.  ECF No. 85, Ex. A; ECF No. 43, ¶ 27 (acknowledging the transfer of servicing from Wells Fargo to Rushmore in March 2016).  Moreover, the foreclosure sale of the Property did not occur until March 1, 2017 – a year after Wells Fargo no longer serviced Plaintiffs' Loan.  ECF No. 85, Ex. A.

Even if Wells Fargo's failure to reimburse Plaintiffs for their motion to reschedule the foreclosure sale could somehow be construed as moving for an order of sale, which it cannot, at least one of the three conditions in Section (d) of Regulation X had been satisfied at that time. As shown by Wells Fargo's October 31, 2014 letter, Plaintiffs failed to comply with the requirements of the Trial Period Plan almost immediately after receiving notice of its approval by not submitting the additional documents required by Wells Fargo to clear title issues on the Property.  Declaration, ¶¶ 5, 8, Ex. E.   As a result, Wells Fargo had the right to – but did not – move to reschedule the foreclosure sale at the time Plaintiffs filed their December 2014 motion to reschedule the foreclosure sale.  Instead, Wells Fargo did not oppose Plaintiffs' efforts to reschedule the foreclosure sale while giving Plaintiffs ample opportunity to comply with the Trial Period Plan by providing documents to clear title.  ECF No. 85, Ex. A; ECF No. 37-1, ¶ 10; Declaration, Ex. D-F.  Plaintiffs, however, never so complied.

Because Plaintiffs cannot establish that Wells Fargo violated the requirements of Section (d) of Regulation X, they likewise cannot establish any actual damages stemming from a non-existent violation.  Accordingly, Wells Fargo is entitled to summary judgment as a matter of law

in its favor as to Count IV of the Second Amended Complaint.

WHEREFORE, Defendant, Wells Fargo Bank, N.A., respectfully requests that this Court enter final summary judgment in its favor as to Counts I, III and IV of the Second Amended Complaint filed by Plaintiffs Julie O'Steen and Christopher O'Steen (ECF No. 43), and award such other and further relief as this Court deems proper.

Respectfully submitted,

|  | s/ Linda M. Reck |
|---|---|
| **Michele L. Stocker** | **Linda M. Reck** |
| Florida Bar No. 0044105 | Florida Bar No. 0669474 |
| stockerm@gtlaw.com | reckl@gtlaw.com |
| smithl@gtlaw.com | culpepperd@gtlaw.com |
| flservice@gtlaw.com | flservice@gtlaw.com |
| **GREENBERG TRAURIG, P.A.** | **GREENBERG TRAURIG, P.A.** |
| 401 East Las Olas Boulevard, Suite 2000 | 450 South Orange Ave., Suite 650 |
| Fort Lauderdale, FL 33301 | Orlando, FL 32801 |
| Telephone:   (954) 765-0500 | Telephone:   (407) 254-2643 |
| Facsimile:   (954) 765-1477 | Facsimile:   (407) 650-8428 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of June, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: /s/ Linda M. Reck

## <u>SERVICE LIST</u>

| | |
|---|---|
| **Michael Alex Wasylik, Esq.**<br>Ricardo & Wasylik, PL<br>P.O. Box 2245<br>Dade City, Florida 33526<br>Telephone:      352-567-3173<br>Facsimile:      352-567-3193<br>Email: service@ricardolaw.com | **SHD Legal Group P.A.**<br>Attorneys for Rushmore<br>PO BOX 19519<br>Fort Lauderdale, FL 33318<br>Telephone: (954) 564-0071<br>Facsimile: (954) 564-9252<br>Service E-mail: answers@shdlegalgroup.com |